CHARLES E. PICKLE v. JOHN D. McCALL, COMPTROLLER.

No. 36.

## 1. Mandamus by Supreme Court.

Section 3, article 5, of the State Constitution prescribes: "The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." The Legislature (Acts Twenty-second Legislature, page 21) enacted, that "The Supreme Court, or any justice thereof, shall have power to issue writs of habeas corpus, as may be prescribed by law; and the said court, or the justices thereof, may issue writs of mandamus, procedendo, certiorari. and all writs necessary to enforce the jurisdiction of said court; and in term time or vacation may issue writs of quo warranto or mandamus against any district judge or officer of the State Government, except the Governor of the State." The last clause of this act of the Legislature was intended to confer the original jurisdiction contemplated by the Constitution upon the Supreme Court.................. 217

## 2. Mandamus.

That the issuance of a writ of mandamus requiring a person, although an officer, if not a court, or officer of a court, to do some act. must be authorized by the exercise of original jurisdiction, is well settled. Marberry v. Madison, 1 Cranch, 68 ................................. 218

## 3. "Cases as May be Specified."

The statute is understood to mean in specifying *cases* in which mandamus may be issued:

1. Cases wherein the facts render it proper that the writ should lie, or is a necessary process for enforcement of the right assailed........

2. The person against whom the jurisdiction may be exercised, viz., a State officer or district judge. This is a sufficient specification .... 219

## 4. Comptroller a State Officer.

The Comptroller of the State is a State officer, subject to the law granting to the Supreme Court the power to issue writs of mandamus..... 219

## 5. Constitution, Article 4, Section 14—Approval and Veto of Bills.

See discussion of section 14 of article 4 of Constitution on the duties and power of the Governor in acting upon bills presented to him for his action; approval, veto. veto in part, etc. ............................ 222

## 6. Passage and Approval of Bills.

In the nature of things. the Executive and the Legislature can not have at the same time power over a bill or part of a bill. The Governor has power to act on a bill only when it has been passed by both houses, and the power of the Legislature to further act on a bill or part of a bill when passed and sent to the Executive for approval, does not exist until he has returned the bill with his objections to it, or in case of an appropriation bill, has sent a statement of items objected to.......... 223

## 7. Same.

The Governor was under no obligation to act upon the bill in question (presented on the day of adjournment of the Legislature) before the adjournment; but as he elected to do so, it was incumbent upon him

to reject or approve it as an entirety or in part, and if only in part, to point out, in the statement he was required to make and append to it, all the items to which he objected, and a copy of that statement to send to the house in which the bill originated. The Legislature was authorized to conclude, when the Governor sent in his objections to some items in the bill, that in accordance with the Constitution he had signed the bill;  *  *  *  that he had approved every item in the bill not objected to in the paper sent to the Legislature .......... 224

## 8. Same.

The Constitution does not recognize the power of the Executive to exercise the veto power upon items of an appropriation bill while the Legislature is in session, and after its adjournment to exercise it with reference to other items..................... ........................ 225

## 9. Case in Judgment.

Pickle was duly appointed and qualified as stenographer for the Court of Civil Appeals for the Third District. He presented an approved voucher for his salary. The Comptroller refused to pay, on the ground that there was no appropriation. The appropriation had passed both houses of the Legislature as an item of the general appropriation bill. This bill had been presented to the Governor, May 9, 1893, at 9:45 a. m. At 11:30 a. m. of the same day the Governor sent a message to both houses, in which he objected to items in the bill, but not to the item in question. The Legislature adjourned soon after the message, on same day. On next day, May 10, the Governor endorsed his approval upon the bill, except as to those noted in his message of the day before, and the appropriation in question. *Held*, that the bill within the meaning of the Constitution was not in the hands of the Governor at the time of adjournment for any purpose not ministerial, and that his action on the 10th of May did not affect the item in controversy ....................................................................... 226

ORIGINAL PROCEEDING for mandamus. The opinion gives the facts.

*Fisher & Townes*, for plaintiff.—On the question of the jurisdiction of this court over the subject matter of this suit, the plaintiff submits the following:

Section 3 of article 5 of our present Constitution conclusively shows that the Legislature has power to confer original jurisdiction on this court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State, and it is needless to consume the time of the court in discussing that proposition.  *  *  *

On the merits of the case, we contend:

1. That when an officer's salary is due from the State, and an appropriation has been made to pay the same, the issuance of the warrant therefor by the Comptroller of Public Accounts is a ministerial act, and if he refuse to perform his official duty in that regard, mandamus is the proper remedy. High on Ex. Rem., secs. 100–105, and cases cited; 14 Am. and Eng. Encycl. of Law, 149, and cases cited in the notes.

2. That petitioner having been duly appointed as stenographer of the Court of Civil Appeals for the Third Supreme Judicial District, under the Act of April 13, 1892, and having qualified and given bond as required by said act, is an officer, and his duties and salary are fixed by law. Acts 22nd Leg., ch. 15, sec. 51.

3. That the Legislature having made an appropriation for petitioner's salary for the time for which he seeks to have the warrant issued in his favor, and said item never having been vetoed, is now a valid subsisting item in the general appropriation law, and binding on all the officers of the government as such.

This brings us to a consideration of the real question in the case, the effect of the action of the Governor in his attempt to veto the item in the appropriation bill providing for petitioner's salary.

Against the validity of this action we urge four objections:

1. The Governor had, on May 9, vetoed, by message sent to the Legislature, such items in the general appropriation bill as he disapproved, and his action in so doing was a legal approval of all the remaining items in said bill, and exhausted his prerogative as to the whole subject matter of the bill, and he could not lawfully make a second veto, including other and additional items of said bill.

2. The two methods of vetoing bills provided by the Constitution, viz., by message to the Legislature while in session and by proclamation after adjournment, are exclusive of each other and not cumulative. That is, if the conditions exist which permit the exercise of the veto power by message to the Legislature, and the Governor avails himself of the opportunity thus afforded, and sends a message to the Legislature vetoing such items of the bill as he disapproves, he can not thereafter, after adjournment, veto additional items in such bill by filing his objections in the Secretary of State's office and making proclamation with regard thereto.

3. It is not competent for the Governor to extend the power to veto so as to make it include and embrace the power to suspend the law.

4. It is not competent for the Governor to veto a constitutional appropriation to pay the salary of an officer of the judicial department of the government.

We have found no case identical with this, nor one so nearly analogous as to be absolutely conclusive of the questions involved, though the general principles recognized in the adjudications on the veto power furnish guides which, we think, lead safely to correct solutions of all the issues presented.

Some of these issues are:

(1) The veto power is a legislative and not an executive function. Cool. on Con. Lim., 185; Fowler v. Pierce, 2 Cal., 166; The People v. Bowen, 21 N. Y., 520–523.

(2) The grant of such legislative function to an executive officer being exceptional, the power does not go beyond the grant, but its extent and the manner of its exercise are both dependent on and limited by the terms used by the Constitution in conferring the power, and unless there can be found express authority for the existence and exercise of the power claimed in any given case, the action is without authority and void.

(3) The power to veto can be exercised but once with regard to any particular bill. That is, when a bill goes to the Executive and is passed on by him, and he has acted on it officially, and it has gone from his dominion and jurisdiction, he can not again take it up and veto other portions thereof. Tarlton v. Peggs, 18 Ind., 24; The People v. Hatch, 19 Ill., 283; Wolfe v. McCaul, 76 Va., 876; Cool. on Const. Lim.

These principles we believe to be sound in themselves and supported by the great weight of authority. It is true it is sometimes difficult to apply the one last mentioned, and determine just when the Executive has so dealt with a bill and its subject matter as to lose his control over it; but the principle that when he has done so his prerogative is exhausted as to that bill, seems to be universally recognized.

*C. A. Culberson*, Attorney-General, for defendant.— 1. It is insisted that while the Legislature, by the Constitution, is authorized to confer original jurisdiction upon this court in this character of case, yet no such legislation has been enacted. This question has heretofore been presented to the court in an argument filed in the case of Teat v. McGaughey, 85 Texas, 478, to which I beg to refer the court without repeating it here. In addition to what was said in that argument, the attention of the court is called to the case of The State v. Davis, 12 South Carolina, 539, in which the meaning of the word "cases," as used in the Constitution and statutes defining jurisdiction, is defined, showing that this use of it refers to the subject matter of litigation rather than the parties thereto.

2. On the merits the case turns upon the proper construction of section 14, article 4, of the Constitution. By this section it is provided, that every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval; that if he approve he shall sign it, but if he disapprove it he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon its journal and proceed to reconsider it; that if after such reconsideration two-thirds of the members present agree to pass the bill, it shall be sent, with the objection, to the other house, by which it shall be reconsidered, and if approved by two-thirds of the members of that house, it shall become a law. That if any bill be not returned by the Governor, with his objections, within ten days after it shall have been presented to him, it shall become a law, unless the Legislature by its adjournment prevent its return, in which case it shall become a law,

unless the Governor file it, with his objections, with the Secretary of State, and give notice thereof by proclamation within twenty days after adjournment.

The remaining portion of this section is as follows: "If any bill presented to the Governor contains several items of appropriation, he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect. If the Legislature be in session, he shall transmit to the house in which the bill originated a copy of such statement, and the items objected to shall be separately considered. If on reconsideration one or more of such items be approved by two-thirds of the members present of each house, the same shall be part of the law, notwithstanding the objections of the Governor. If any such bill, containing several items of appropriation, not having been presented to the Governor ten days (Sundays excepted) prior to adjournment, be in the hands of the Governor at the time of adjournment, he shall have twenty days from such adjournment within which to file objections to any items thereof, and make proclamation of the same, and such item or items shall not take effect."

(1) This provision of the Constitution should receive a liberal and reasonable construction. Opinion of Judges, 45 N. H., 609.

(2) The Executive may, under our Constitution, object to any item of an appropriation bill, whether it be for salary of an officer expressly provided for by law or otherwise. The Constitution makes no distinction. It is provided by the Constitution, that "no money shall be drawn from the treasury but in pursuance of specific appropriations made by law" (Constitution, section 6, article 8); that the Governor "may object to one or more of such items" in a general appropriation bill, and that "no item so objected to shall take effect" unless passed over his objection by two-thirds of each house. To sustain the contention of plaintiff, it is necessary to read into this provision an exception in favor of offices created by law, not authorized by the Legislature. Miller on the Const., 181, et seq.

3. A general appropriation bill which is not presented to the Governor ten days prior to the adjournment of the Legislature, and is in his hands at the time of adjournment without final action by him, is subject to his official action thereon for twenty days after adjournment. Until it passes from his control by the constitutional mode of legislation, he may act upon a bill. The People v. Hatch, 19 Ill., 283; Tarlton v. Peggs, 18 Ind., 24.

The proper construction of our Constitution, it seems to me, is not difficult. If an appropriation bill containing several items is presented to the Governor, he may object to one or more of such items and approve

the other portion of the bill. In such case, that is, where he objects to certain items and approves the other portion of the bill, he should append to the bill a statement of the items to which he objects, and if the Legislature is in session, he should transmit to the house in which the bill originated a copy of such statement. If, however, the other portion of the bill is not approved while the Legislature is in session, the question is governed by the last clause of the section, and he may act upon the bill at any time within twenty days after adjournment.

Unless objection is made to items thereof, and the balance approved, the Constitution does not contemplate that any executive communication shall be transmitted to the house in which the bill originated.

It is alleged that the Governor sent to the House of Representatives at 11:30 a. m., May 9, a message in which he stated objections to certain items of appropriation. But it is also alleged that the other portion of the bill was not approved until May 10, subsequent to the adjournment of the Legislature, at which time the objectionable items were again definitely and plainly pointed out. The item involved in this action was specifically referred to. Unquestionably, therefore, the action of the Governor on May 10 was that contemplated by the Constitution, and neither the item we are considering nor any other there referred to can be paid.

4. If this construction of the Constitution is not accepted, the action of the Governor in objecting to the item of appropriation for plaintiff must nevertheless be sustained, because until approved by him the balance of the act was subject to his action thereon, and because through haste and inadvertence this item was not objected to in the message to the Legislature, though such was the intention of the Governor, as appears from his approval of the bill on May 10. The People v. Hatch, 19 Ill., 283.

STAYTON, CHIEF JUSTICE.—To grant the relief asked in this cause, this court must exercise a jurisdiction original in character, and the inquiry arises whether such jurisdiction has been conferred.

The Constitution provides, that " The Supreme Court and the justices thereof shall have power to issue writs of habeas corpus as may be prescribed by law; and under such regulations as may be prescribed by law, the said court, and the justices thereof, may issue the writs of mandamus, procedendo, certiorari, and such other writs as may be necessary to enforce its jurisdiction. The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." Const., art. 5, sec. 3.

By the Act approved April 13, 1892, it was provided, that " The Supreme Court, or any justice thereof, shall have power to issue writs of habeas corpus as may be prescribed by law; and the said court, or the justices thereof, may issue writs of mandamus, procedendo, certiorari, and

all writs necessary to enforce the jurisdiction of said court; and in term time or vacation may issue writs of quo warranto or mandamus against any district judge or officer of the State Government, except the Governor of the State." Art. 1012.

It is evident that the Legislature intended,.by the last paragraph of this statute, to confer upon this court that original jurisdiction contemplated by the Constitution; for other parts of the statute have application to the issuance of all writs necessary to enforce the appellate jurisdiction conferred by the Constitution.

No case could arise in which a court, in the exercise of appellate jurisdiction, could grant a writ of quo warranto; but in the exercise of such power an appellate court may direct the issuance of process necessary to carry out its judgment rendered on appeal from the judgment of a court of original jurisdiction rendered in a cause in which a writ of quo warranto was the leading process.

That the issuance of a writ of mandamus requiring a person, although an officer, if not a court or officer of a court, to do some act must be authorized by the exercise of original jurisdiction, is well settled. Marbury v. Madison, 1 Cranch, 68.

The statute authorizes this court to issue writs of mandamus against any officer of the State Government except the Governor; and as this can be done only in the exercise of original jurisdiction, it must be presumed that the Legislature, aware of the rules of law applicable to the subject, intended to confer such jurisdiction as was necessary to that end.

The power to do this the Constitution gave, and it is evident that in the enactment of the statute in question the Legislature intended to exercise that power.

The Constitution, however, only authorized the Legislature to confer on this court original jurisdiction " to issue writs of quo warranto and mandamus in such cases as may be specified;" and the question arises whether such specification of cases has been made as will satisfy the requirements of the Constitution.

If the word "cases" found in the Constitution has only a technical import, and means that the Legislature must declare the states of fact on which parties base right and call for the exercise of jurisdiction, then it may be true that the cases have not been specified; but if not so used, then any language which points out with reasonable certainty the classes of controversies and parties thereto over which the court may exercise original jurisdiction, must be deemed a sufficient specification.

The Constitution has application only to cases in which writs of quo warranto or mandamus may be the proper or necessary process, and the statute attempts to give original jurisdiction in those classes of cases only, and restricts this by designating classes of persons against whom only such writs may run and such jurisdiction be exercised.

The Constitution has application to cases in which the named writs may run against persons, as distinguished from courts, for it excepts a person—the Governor—from such jurisdiction.

Thus the statute provides or specifies in two methods the instances or cases in which the Legislature intended this court should have and exercise original jurisdiction.

The facts on which right is based must be such that the writ of quo warranto or of mandamus is proper or necessary process for enforcement of the right asserted, and the person against whom this original jurisdiction may be exercised must be a State officer or a district judge.

Can it be said, when the parties defendant and the nature of the controversies are thus designated, that the cases have not been specified with reasonable certainty ?

It would have been impracticable for the Legislature to designate or specify every state of facts which must exist in which the use of the writs named would be proper or necessary; for the facts on which such controversies arise are seldom the same in any two cases; and had the Legislature attempted to thus state technically the cases in which the original jurisdiction might be exercised, the purpose of the Constitution would have failed in reference to many controversies wherein would exist the facts on which such jurisdiction might properly be given.

Laws conferring jurisdiction on courts must necessarily be in words somewhat general; and if we look to the Constitution, it will be seen that the language there used in conferring jurisdiction on District and other courts does not, in many instances, so specifically declare under what states of fact jurisdiction may be exercised as does the statute under consideration.

Some question may arise as to what officers are embraced in the words " officer of the State Government;" but there can be no doubt that the Comptroller of Public Accounts is a State officer, for he is an officer in one of the departments of the executive branch of the State Government, whose duties extend to the transaction of the business of that department throughout the entire State.

The statute under consideration was evidently intended to confer, and does confer, upon this court an original jurisdiction such as it was intended the Legislature should have power to confer.

By section 51 of the act to organize the Courts of Civil Appeals, to define their jurisdiction and powers, and to prescribe the mode of procedure therein, approved April 13, 1892, it was declared, that " Each Court of Civil Appeals shall appoint one stenographer. who shall discharge such duties as may be required by the court, shall be duly sworn to keep secret all matters which may come to his knowledge as said stenographer, shall receive a salary of twelve hundred dollars per annum, and shall each give bond, with two or more sureties, in the sum of five thousand dollars, pay-

able to the State of Texas, conditioned for the faithful performance of the duties of said office.''

On October 4. 1892, the Court of Civil Appeals for the Third Supreme Judicial District appointed Charles E. Pickle stenographer for that court, and he qualified and was engaged in the performance of the duties of the office when this action was brought.

On June 1, 1893, the chief justice of that court gave a certificate, under the seal of the court, showing the existence of the facts above stated, and further stating that salary was due him from May 10, 1893.

This certificate was presented to the Comptroller on June 2, 1893, with request that his account be audited and a warrant be issued on the Treasurer for the salary due, but that officer refused to issue the warrant, on the ground that the Legislature had made no appropriation to pay for his services.

This action was brought in this court to compel the Comptroller, by mandamus, to issue the warrant.

There is no controversy about the facts, and the action of the Comptroller was based upon the proposition that the Governor had vetoed that part of the general appropriation bill which appropriated money to pay the salary of this stenographer.

The facts on which the Comptroller based his opinion and refusal were, that on May 9, 1893, the general appropriation bill, which embraced an appropriation to pay the salary of the plaintiff, after having been passed by both houses of the Legislature and properly authenticated, was presented to the Governor for approval at 9:45 a. m.

At 11:30 a. m. on the same day, the Governor sent a message to the two houses, in which he objected to items in the bill, but the objections did not embrace the item of appropriation to pay the salary of the plaintiff for two years beginning on March 1, 1893; and both houses adjourned for the session soon after the message was received, without taking action upon it.

The first part of that message was:

"EXECUTIVE OFFICE, AUSTIN, TEXAS, May 9, 1893.

"*Gentlemen of the Senate and House of Representatives:*

"The appropriations for the support of the State Government for the next two years, ending February 28, 1895, made by your honorable body in substitute House bill number 116, just received in the executive office, exceed the estimated revenues for that period by several hundred thousand dollars, which at the present rate of taxation must lead to a deficiency detrimental to the public interest.

"To avert this undesirable result, I must, in the exercise of the constitutional prerogative vested in the Governor, point out the items to which I object, and approve only those in the bill that may, by the strict-

est rule of economy, appear to be absolutely necessary for the fairly efficient administration of public affairs.''

Then follows an enumeration of the several items objected to, with the reasons for their disapproval, and among them were appropriations for salaries of stenographers for Supreme Court, Court of Criminal Appeals, and Courts of Civil Appeals for the First and Second Supreme Judicial Districts.

The message concluded with this language: '' By striking from this bill these several items herein pointed out, I feel confident that no necessary public demand will be disappointed, no material interest damaged, and that the present very low tax rate can be maintained without much, if any, deficiency of the public revenues. This certainly can be done by proper renditions of property to tax assessors, close collections from those who owe the government, and strict economy in all its departments. At least it is well to make the effort, and I feel reasonably certain of its success.''

On the next day, after stating the number of the bill and the title of the act as contained in it, the Governor wrote upon it as follows:

''Approved, this the 10th day of May, A. D. 1893, save and except as to the items contained and specially set forth in my veto message to the Legislature on yesterday, said items being underscored and marked by a cross opposite each herein, showing the ones stricken out; and also except as to the item of $1200 each year for ' salary of stenographer,' on page 10 hereof, appropriated under the head of ' Court of Civil Appeals, Third Supreme Judicial District.' This item I intended, but omitted, to include in my veto message. I now object to and veto it, for the reason that while such clerical force may be desirable, it is not deemed necessary to the court. And due proclamation is hereby given and directed to be made public as required by the Constitution, showing my said objections to the said item. To avoid mistakes as to any and all items to which I have objection and desire stricken out of this bill, a copy of my message to the Legislature delivered to that body on yesterday, the 9th day of this month, is hereby appended and made a part hereof, and directed to be filed in the office of Secretary of State, for the notice of all interested parties, and public officers in particular.

[Signed]                                ''J. S. Hogg, Governor.''

The Constitution provides as follows:

'' Every bill that shall have passed both houses of the Legislature shall be presented to the Governor for his approval. If he approve, he shall sign it; but if he disapprove it, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon its journal and proceed to reconsider it. If after such reconsideration two-thirds of the members present agree to pass the bill, it

shall be sent, with the objections, to the other house, by which likewise it shall be reconsidered; and if approved by two-thirds of the members of that house, it shall become a law; but in such cases the votes of both houses shall be determined by yeas and nays, and the names of the members voting for and against the bill shall be entered on the journal of each house respectively. If any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature, by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same, with his objections, in the office of the Secretary of State, and give notice thereof by public proclamation within twenty days after such adjournment.

"If any bill presented to the Governor contains several items of appropriation, he may object to one or more of such items and approve the other portion of the bill. In such case he shall append to the bill at the time of signing it a statement of the items to which he objects, and no item so objected to shall take effect. If the Legislature be in session, he shall transmit to the house in which the bill originated a copy of such statement, and the items objected to shall be separately considered. If on reconsideration one or more of such items be approved by two-thirds of the members present of each house, the same shall be part of the law, notwithstanding the objections of the Governor. If any such bill, containing several items of appropriation, not having been presented to the Governor ten days (Sundays excepted) prior to adjournment, be in the hands of the Governor at the time of adjournment, he shall have twenty days from such adjournment within which to file objections to any items thereof and make proclamation of the same, and such item or items shall not take effect." Const., art. 4, sec. 14.

Every bill which has passed both houses must be presented to the Governor for his approval; but when a bill other than one containing several items of appropriation has been presented to him, he must return *the bill* itself to the house in which it originated, if he disapprove it, with statement of his objections to it, unless this be prevented by adjournment.

If, however, the Governor disapprove one or more items in an appropriation bill embracing others which he approves, then he is not required *to return the bill* with his objections thereto to the house in which it originated; but in such case, if the Legislature be still in session, the Constitution requires the Executive to append to the bill, at the time of signing it, a statement of the items to which he objects, and a copy of that statement must be sent to the house in which the bill originated.

The paper thus required to be sent to the Legislature is but a copy of the statement of objections appended to the bill, which, under the Constitution, the Governor is required to sign at the time he appends the

statement; but the signing is only evidence of his approval of the items not objected to in the appended statement.

The purpose of sending to the house in which the bill originated a copy of the statement appended to the bill is to inform the Legislature of the action of the Governor, and again to place subject to the action of the two houses the items objected to, as is done when a bill other than an appropriation bill containing many items is returned to the house in which it originated with the Executive's objections to it.

The Governor and Legislature each have their appropriate functions, to be exercised in reference to the enactment of laws; but the ultimate and absolute power, subject to constitutional restraint, is with the latter.

The Legislature has the affirmative power to enact laws, while the Executive has only a negative power, by the constitutional exercise of which he may defeat the will of the majority of both houses of the Legislature; but this power has no effect when, upon his veto, two-thirds of the members present in each house declare that a bill shall become a law.

In the nature of things, the Executive and the Legislature can not have at the same time power over a bill or part of a bill.

The Governor has power to act on a bill only when it has been passed by both houses; and the power of the Legislature to further act on a bill or part of a bill when passed and sent to the Executive for approval does not exist until he has returned the bill with his objections to it, or in case of an appropriation bill, has sent a statement of items objected to.

It has been held that a Legislature has no power to recall a bill which has been regularly passed and sent to the Governor for his approval, and that the latter can not return such a bill to the Legislature except with his veto and objections.   Wolf v. McCaull, 76 Va., 876.

Whether facts might exist that would make such a recall, before the Executive had acted upon the bill, lawful, need not now be considered, for such a course would not involve a violation of the rule that both at the same time can not have power over a bill.

The Legislature having power to enact laws, notwithstanding opposition expressed thereto by the Executive in the mode prescribed by the Constitution, any course on his part that would defeat the free exercise of that power ought to be held invalid, unless authorized by the Constitution, as in the case of the exercise by him of the right within twenty days after adjournment to veto any bill presented for approval within less than ten days prior to adjournment.

That power is given to the Executive, and it is his right and duty to exercise it when deemed proper; but the two houses, in the exercise of legitimate power, might avoid even such a contingency by presenting for approval more than ten days before adjournment all bills passed; for then if the Governor did not act upon them before adjournment, they would become operative without his approval, and if he objected they could be

enacted over his veto by the requisite vote; for during a regular session the two houses could so fix the day for adjournment as to pass all necessary laws.

The Governor was under no obligation to act on the bill in question before adjournment; but as he elected to do so, it was incumbent upon him to reject or approve it as an entirety or in part; and if only in part, to point out, in the statement he was required to make and append to it, all the items to which he objected, and a copy of that statement to send to the house in which the bill originated.

It is not questioned that the Governor had in his own mind determined to veto the item in question, and that through inadvertence he failed to include it in the statement sent to the Legislature; but it is not upon his unexpressed resolve that the Legislature may act; for it must act, if at all, on the written objections sent in, and has no authority to act upon any others.

The Legislature was authorized to conclude, when the Governor sent in his communication making objections to some items in the bill, that in accordance with the requirements of the Constitution, he had signed the bill and appended thereto a statement of his objections to items named in it, and that the paper sent in was a copy of that statement; or in other words, that he had approved every item in the bill not objected to in the paper sent to t e Legislature.

Power is given to the Executive to veto items in an appropriation bill after adjournment; and this power is manifestly given that he may have sufficient time carefully to consider bills, and to determine the propriety or necessity for the several appropriations; but as this may not be needed, he has power to pass on a bill, as was done in the present instance, before adjournment, however short the time may be after a bill is presented to him for approval before that occurs.

If the Governor acts, and notifies the Legislature of his objections to only a part of the items to which he in fact objects, the Legislature would not only be thus misled, but would be practically deprived of opportunity to exercise a power it possessed, and might have exercised, had a statement been sent in of all items to which objection was in fact made.

That the Legislature and the Governor recognized the communication sent in as the statement of objections the latter was required to make when he did not approve of all items in an appropriation bill, is clear.

That the Governor acted upon that view of the question is evidenced by the fact that he did not deem it necessary subsequently to take such steps as would have been necessary to deprive the parts of the bill objected to of effect.

The proclamation made did not embrace the items named in the message sent to the Legislature, but referred only to the item in controversy.

That the Legislature was authorized, if not compelled, from the message itself, to come to the same conclusion, can not be doubted.

It declared that the Executive, *in the exercise of his constitutional prerogative, must point out the several items to which he objected;* items were pointed out; to these he felt constrained to enter his objections, and it was declared, that "*by striking from this bill these several items herein pointed out,* I feel that no necessary public demand will be disappointed," etc.

It is probably true, had the item in controversy been one objected to in the communication, that the Legislature would not have sustained this appropriation by the requisite vote; but this can not affect the rule or the decision of this case.

It must be presumed that every department of the government, when necessary, will properly exercise the powers conferred upon it; and one may not exercise its powers, in a manner and time not contemplated by the Constitution, so as to defeat the right or opportunity of another lawfully to exercise all the power conferred upon it.

If the Governor, after sending in his message objecting only to the items therein pointed out, had after adjournment attempted to veto the appropriations contained in the bill for the support of the several asylums, or some department of the State Government, who would recognize the validity of such an act, or doubt that the Legislature would have remained in session until necessary appropriations for such purposes had become laws, if those made had been vetoed by the Governor prior to adjournment?

The attempt to exercise the veto power under such circumstances would be invalid, because the Constitution does not recognize the power of the Executive to exercise it as to items in an appropriation bill while the Legislature is in session, and after its adjournment to exercise it with reference to other items.

If before or simultaneously with the sending of the message to the Legislature the Governor had signed the bill, attached thereto a statement of his objections to items, and caused it to be filed in the office of the Secretary of State, no one would assert his power after adjournment to veto any item in the bill.

These facts would only evidence his approval of so much of the bill as was not thus objected to; but his approval of items not objected to in the message was as clearly evidenced to the Legislature by the message as could it otherwise have been, for that was to be deemed the communication required by the Constitution to be transmitted to the house in which the bill originated, for the government of further legislative action.

That the Governor, in order of time, may not have proceeded regularly in signing the bill, appending to it his objections, and transmitting

them by means of a copy of that statement to the Legislature, can not affect the question of power; nor can the ordinary rules applicable to the delivery of instruments be applied, for reasons before stated.

It may be that prior to adjournment a second communication, objecting to the item in controversy, might lawfully have been sent to the Legislature, and it appears reasonable that the Executive should have power thus to remedy an inadvertent omission of an item in fact objected to when the first communication was sent in; for such a course, if pursued at proper time, would neither mislead the Legislature nor deprive it of opportunity to exercise the power to enact laws vetoed while the session continues.

Such a course, however, was not pursued, and we are of opinion that every part of the bill not objected to in the communication sent became a law.

The bill, within the meaning of the Constitution, was not in the hands of the Governor at time of adjournment for any purpose not ministerial.

Judgment will be rendered for the plaintiff in accordance with the prayer of his petition.