

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Walter C. Woodward, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-1176
Re: Interpretation of statutes and
appropriation bill for the in-
surance department.

This is to acknowledge receipt of your request of
July 20th for our opinion construing certain statutes and
the general appropriation bill as same applies to your de-
partment, and the effect thereon of the veto by the Governor
of certain items in said appropriation bill.

For convenience we adopt the style you use in
your letter of inquiry and divide this opinion in three
parts. In each division we quote only those parts of your
letter essential to a clear understanding of the problems
before us.

I.

You state that the appropriation bill, as passed
by the legislature, specifically authorized the employment
of and affixed the amount of salary to be paid ten senior
examiners and ten assistant examiners, but that the Governor
by veto eliminated five of the senior examiners and three
assistant examiners, leaving five senior examiners and
seven assistant examiners listed in the bill. Immediately
following the itemized appropriation for the Examining
Division which contains the vetoed items, appears the fol-
lowing rider, which was not vetoed:

"For the purposes of paying the fore-
going examination expense and such expense
as is necessary incident to the examination

Honorable Walter C. Woodward, Page 2

work and the payment of the salaries of any
additional examiners, stenographers, clerks
and such help as is necessary in the adminis-
tration of the examining division (provided
any additional employees performing similar
work to the positions designated hereinabove
shall not receive a greater sum of compensa-
tion than that herein provided), and for
defraying all other expenses necessary for
the administration of the provisions of
Chapter 152 of the General Laws of the Regu-
lar Session of the Forty-second Legislature
and Chapter 264 of the General Laws of the
Regular Session of the Forty-fourth Legis-
lature, and any and all amendments thereto,
and as amended by Senate Bill 397, Acts
Regular Session of the 46th Legislature, 1939,
there is hereby appropriated all fees and
assessments collected under authority of
said Examining Law, together with any balances
at the end of a preceding fiscal year, for
each of the fiscal years ending August 31,
1940, and August 31, 1941. The head of the
department shall make application to the
Board of Control and receive its approval
in writing before employees, other than those
itemized in the appropriation bill, are em-
ployed. Said application shall set out the
reasons, and necessity for the employment of
the additional employees."

Your first question is restated by us to read:

"Did the Governor's veto, by which he
eliminated from the appropriation bill five
senior examiners and three assistant examiners,
have the effect of destroying the right of
the Life Insurance Commissioner to make appli-
cation to the Board of Control and receive its
approval in writing to employ additional em-
ployees, including examiners as specifically
authorized by the rider in the appropriation
bill which was not vetoed?"

Section 6 of Article 8 of the Constitution provides
that "no money shall be drawn from the Treasury but in pur-
suance of specific appropriations made by law," and that no

appropriation of money shall "be made for a longer term than two years."

Section 14 of Article 4 requires every bill passed by the Legislature to be presented to the Governor for his approval and sets forth the procedure to be followed if the same is approved or vetoed. With especial reference to appropriation bills, the section reads:

> " . . . If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect. . . ."

Title 78 of the Revised Civil Statutes of Texas, 1925, and amendments thereto relate to the organization and prescribe the duties of the Board of Insurance Commissioners. Article 4690 directs a biennual examination of each insurance company and reads as follows:

> "The Chairman of the Board of Insurance Commissioners shall, once in each two years, or oftener if he deems necessary, in person or by one or more examiners commissioned by him in writing, visit each company organized under the laws of this state and examine its financial condition and its ability to meet its liabilities, as well as its compliance with the laws of Texas affecting the conduct of its business; and he may similarly, in person or by one or more commissioned examiners, visit and examine, either alone or jointly with representatives of the insurance supervising departments of other states, each Insurance Company not organized under the laws of this state but authorized to transact business in this state. He or his commissioned examiners shall have free access to all the books and papers of the company or agents thereof relating to the business

and affairs of such company, and shall have power to summon and examine under oath the officers, agents and employees of such company and any other person within the state relative to the affairs of such company. He may revoke or modify any certificate of authority issued by him or by any predecessor in office when any condition or requirement prescribed by Law for granting it no longer exists. He shall give such company at least ten days' written notice of his intention to revoke or modify such certificate of authority, stating specifically the reasons for the action he proposes to take."

Articles 4690a and 4690b, as amended by Senate Bill No. 397 of the 46th Legislature, effective May 13, 1939, read as follows:

"Art. 4690a. The expenses of all examinations of domestic insurance companies made on behalf of the State of Texas by the Chairman of the Board of Insurance Commissioners or under his authority shall be paid by the corporations examined in such amount as the Chairman of the Board of Insurance Commissioners shall certify to be just and reasonable.

"Assessments for the expenses of such domestic examination, which shall be sufficient to meet all the expenses and disbursements necessary to comply with the provisions of the laws of Texas relating to the examination of insurance companies and to comply with the provisions of this act, shall be made by the Chairman of the Board of Insurance Commissioners upon the corporations or associations to be examined taking into consideration annual premium receipts, and/or admitted assets, and or insurance in force; provided such assessments shall be made and collected only at the time such examinations are made.

"All sums collected by the Chairman of

the Board of Insurance Commissioners, or
under his authority, on account of the
cost of examinations assessed as herein
above provided for shall be paid into
the State Treasury to the credit of the
Insurance Examination Fund; and the
salaries and expenses of the actuary
of the Board of Insurance Commissioners
and of the examiners and assistants, and
all other expenses of such examinations,
shall be paid upon the certificate of the
Chairman of the Board of Insurance Commis-
sioners by warrant of the Comptroller
drawn upon such fund in the State Treasury.

"If at any time it shall appear that
additional pro rata assessments are neces-
sary to cover all of the expenses and dis-
bursements required by law and necessary
to comply with this Act, the same shall
be made, and any surplus arising from any
and all such assessments, over and above
such expenses and disbursements, shall
be applied in reduction of subsequent as-
sessments in the proportion assessed so
that there shall be so assessed and col-
lected the funds necessary to meet such
expenses and disbursements and no more.

"In case of an examination of a com-
pany not organized under the laws of Texas,
whether such examination is made by the
Texas authorities alone, or jointly with
the insurance supervisory authorities of
another state or states, the expenses of
such examination due to Texas participation
therein, shall be borne by the company under
examination. Payment of such costs shall
be made by the company upon presentation of
itemized written statement by the chairman,
and shall consist of the examiners remunera-
tion and expenses, and the other expenses
of the Department of Insurance properly
allocable to the examination. Payment shall
be made directly to the chairman, and all
money collected by assessment on foreign

companies for the cost of examination shall
be deposited in the State Treasury by the
Chairman to the credit of the Insurance
Examination Fund out of which shall be paid,
by warrant of the State Comptroller of Public
Accounts on voucher of the Chairman of the
Board of Insurance Commissioners, the ex-
aminer's remuneration and expenses in the
amounts determined by the method hereinafter
provided, when verified by their affidavit
and approved by the chairman; and said money
is hereby appropriated for that purpose, the
balance, if any, to remain in the Insurance
Examination Fund in the State Treasury sub-
ject to be expended for the purposes as are
other funds placed therein. Examiner's re-
muneration and expenses shall be the same
as that which would be paid by the home state
of a company under examination to persons
conducting the examination of a Texas company
admitted to do business in that state. If
there be no recognized charge for such service,
the Chairman shall fix the remuneration and
expense allowance of the examiners at such
reasonable figure as he may determine."

"Art. 4690b. The Chairman of the Board
of Insurance Commissioners shall appoint such
number of examiners, one of whom shall be the
chief examiner, and such number of assistants
as he may deem necessary for the purpose of
making on behalf of the State of Texas and of
the Board of Insurance Commissioners all such
examinations of insurance companies at the ex-
pense of such companies or corporations, as
are required to be made or provided for by
law; and, after this act shall take effect
he shall also appoint an actuary to the Board
of Insurance Commissioners to advise the Board
in connection with the performance of its
duties and for aid and advise and council in
connection with all such examinations required
by law. Such examiners and assistants shall,
as directed by the Chairman of the Board of
Insurance Commissioners, perform all the duties
relative to all examinations provided by law

to be made by the Board of Insurance Commissioners of the State of Texas, and it is the purpose of this act to provide for the examination hereunder by the Chairman of the Board of Insurance Commissioners of all corporations, firms or persons engaged in the business of writing insurance of any kind in this state whether now subject to the supervision of the Insurance Department or not.

"All such examiners and assistants and such actuary shall hold office subject to the will of the Chairman of the Board of Insurance Commissioners and the number of such examiners and assistants may be increased or decreased from time to time to suit the needs of the examining work. The actuary and all such examiners and assistants shall be paid out of the Insurance Examination Fund, such salaries as shall be fixed from time to time by the legislature, and their necessary traveling expenses shall be paid out of such fund upon sworn, itemized accounts thereof, to be rendered monthly and approved by the Chairman of the Board of Insurance Commissioners before payment.

"Where the Chairman of the Board shall deem it advisable he may commission the actuary of the Board, the chief examiner, or any other examiner or employee of the Department, or any other person, to conduct or assist in the examination of any company not organized under the laws of Texas and allow them compensation as herein provided, except that they may not be otherwise compensated during the time they are assigned to such foreign company examinations. Other than as thus provided, neither the actuary of the Board of Insurance Commissioners nor any examiner or assistant shall continue to serve as such if, while holding such position, he shall directly or indirectly accept from any insurance company any employment or pay or compensation or gratuity on account of any service rendered or to be rendered on any account whatsoever."

Honorable Walter C. Woodward, Page 8

It has been said that an appropriation need not be made in any particular form of words. It is sufficient if the Legislature authorizes the expenditure by law and specifies the purpose for which it is made. See 38 Tex. Jur. 844; 59 C. J. 244; Cherokee County v. Odom, (Civ. App.) 297 S. W. 1055; Pickle v. Findlay, 44 S. W. 480. Neither is it essential in Texas that the appropriation bill specify the maximum amount which may be drawn from the State Treasury in dollars and cents. Atkins v. State Highway Department, (Civ. App.) 201 S. W. 226.

In the case of Fulmore v. Lane, 140 S. W. 405, Associate Justice Dibrell of the Supreme Court makes the following statement:

"In construing the purport of a veto message, the same rules of construction that govern in construing legislative acts should be applied. The veto power, when exercised, is a legislative and not an executive function. Pickle v. McCall, 86 Tex. 223, 24 S. W. 265; Cooley on Const. Lim. 185; People v. Bowen, 21 N. Y. 517."

We express the conviction the effect of the veto here exercised was to place the Examining Division appropriations in the same status as though the vetoed items had never been included in the bill as finally passed by the Legislature.

It is noted the rider contains the following language:

"The head of the department shall make application to the Board of Control and receive its approval in writing before employees, other than those itemized in the appropriation bill, are employed. Said application shall set out the reasons, and necessity for the employment of the additional employees."

It is clearly the intention of the Legislature that the Board of Control shall determine from the application

Honorable Walter C. Woodward, Page 9


and such other information as may be available to the Board, whether the condition upon which the funds may be expended actually exist, that is, whether the expenditure of such funds, or any portion thereof, is necessary to adequately perform the functions of the Insurance Department.

The validity of such a provision in an appropriation bill was impliedly recognized in the case of Terrell v. Sparks, 135 S. W. 519, wherein the court held sufficiently specific as an appropriation, an appropriation bill providing a sum of money for the Attorney General, to be expended by him by and with the approval of the Governor.

See also State ex rel Normal Schools v. Zimmerman, 183 Wis. 132, 197 N. W. 823. Cases apparently contrary will be found in 91 A. L. R. note at p. 1512, but in most of the cases there cited the constitutional requirements are different from those in Texas. We do not think the same reasoning applicable to our situation.

In view of the provisions of the statutes and authorities cited, you are respectfully advised it is our opinion your question is properly answered in the negative and that by complying with the terms of the rider quoted above you may employ additional necessary employees including examiners and pay them from the special fund created by Articles 4690a and 4690b.

2.

Prior to February 1, 1939, at which time upon request of the State Auditor this department rendered opinion No. O-81 (conference opinion No. 3035), the fees collected by virtue of Article 3920, R. C. S., had been deposited by the Board of Insurance Commissioners in the Insurance Examination Fund and used in connection with the expense of examining companies and for the services of employees incident thereto. The opinion held the fees should be deposited in the general fund.

Senate Bill No. 404 of the Forty-sixth Legislature, as reflected by its emergency clause, was introduced for the purpose of amending Article 3920 to meet the objections pointed out in opinion No. O-81. As finally passed and approved by the Governor, the bill amended Article 3920 so that up to September 1, 1939, the Insurance Department was

authorized to use the fees for the purpose theretofore used.
(See opinion No. O-847, written to you on June 15, 1939).

We quote from your letter:

"As relates to the next biennium, the bill reads as follows:

"'After August 31, 1939, all fees collected by virtue of this Article shall be deposited in the State Treasury and appropriated to the use and benefit of the Board of Insurance Commissioners to be used in the payment of salaries and other expenses arising out of and in connection with the examination of insurance companies and/or the licensing of insurance companies and investigations of violations of the insurance laws of this State in such manner as provided in the general appropriation bill for the Life Insurance Division and Examining Division and Agents' License Division of the Board of Insurance Commissioners.'

" . . .

"The question I now submit to you is:

"(a) Do you regard the language above quoted from Senate Bill No. 404 as an appropriation of the fees set out in Article 3920, supra, for the purposes therein stated?

"In connection with the foregoing, another inquiry is necessary, as will appear from the following statement:

"Following the Agents' License Division, which is one of the divisions to which, under said Senate Bill No. 404, we were permitted to use the fees (the Agents' License Division, including the licensing of insurance companies and the investigation of violation of the insurance laws) there appears the following rider in words and figures as follows:

Honorable Walter C. Woodward, Page 11

"' Subject to the limitations set
forth in the provisions appearing at
the end of this Act, all agents' license
fees collected by virtue of the license
laws, shall be deposited in the State
Treasury, and are hereby appropriated
and may be expended, during the fiscal
years ending August 31, 1940, and August
31, 1941, in accordance with the laws
of this State for payment of the items
listed above.'

"In connection with the foregoing
statement, your attention is directed to
Section 7 of Article 5068a, requiring
the collection of an agent's license
fee of $1.00.

"The question submitted is:

"(b) Does the rider above set out
prohibit this department from the use
of the fees, or any part thereof, set
out in Senate Bill No. 404, in addition
to the Agents' License fees as provided
for in Section 7 of Article 5068a afore-
said?  In other words, does the rider
confine this department to the use of
the Agents' License fees in the payment
of the salaries and other expenses listed
under the Agents' License Division of the
appropriation bill?  Or is it to be con-
strued as permitting the appropriation
thereof, in addition to the fees, or any
part thereof, set out in Senate Bill No.
404 (Article 3920)?  * * *

"The Commission construes the rider
as permitting the use of the Agents'
License fees in connection with the fees
collected under said Senate Bill No. 404
(Article 3920) and that the rider is not
intended to restrict use to the use of
the Agents' License fees and nothing
else."

Honorable Walter C. Woodward, Page 12

We note the specific language of the above quoted paragraph of Article 3920 as amended by Senate Bill 404. It will be readily seen there is a marked difference between the provisions of the above paragraph and the specific language employed in providing the use of the funds from the time of the passage of the act until September 1, 1939, which in direct language appropriates the money collected as such fees for a specific purpose. Stripped of all excess verbiage, the Legislature by the quoted paragraph which we are construing says:

> "After August 31, 1939, all fees collected . . . shall be . . . appropriated . . . in such manner as provided in the general appropriation bill . . ."

Here, we have no appropriation but what appears merely a direction to the Legislature itself to later make the appropriation in the general appropriation bill. We fail to find where such has been done, and we are of opinion that the situation, by the very terms of Senate Bill 404, in the absence of mention in the general appropriation bill, reverts to the status occupied at the time opinion O-81 was written. At the time of the passage and executive approval of Senate Bill 404, the general appropriation bill had not been finally passed. The language of said Senate Bill could very well have expressed the <u>legislative intent</u> at the time of its passage, but there is no language in the general appropriation bill indicative of such intent or capable of being so construed by us now.

We therefore answer your questions: (a) We do not regard the language quoted from Senate Bill No. 404 as an appropriation of the fees set out in Article 3920, as amended, for the purposes therein stated, or for any other purpose. (b) We do not regard the rider as authorizing the Insurance Department to use the fees mentioned in the payment of the salaries and other expenses listed under the Agents' License Division. We are of opinion these fees should be deposited in the State General Fund.

In view of our answer to the questions as given, we do not think it amiss to state we note no prohibition that the various items mentioned in the Agents' License Division may not be paid from the state's general fund even though

Honorable Walter C. Woodward, Page 13

the Agents' License fees appropriated in the rider to the general appropriation bill do not suffice to pay same. There is no language in the rider restricting the division solely to the use of the fees there mentioned.

3.

In the third section of your letter you quote Section 35 of Senate Bill 135 as passed by the 46th Legislature and duly approved by the Governor:

> "Sec. 35. All fees paid to the Board of Insurance Commissioners by all associations regulated by this Act shall be and the same are here and now appropriated for the balance of the fiscal year ending August 31, 1939, to the use and benefit of the Life Insurance Division of the Board of Insurance Commissioners, to be used by the Life Insurance Commissioner for the purpose of enforcing and carrying out the provisions of this act and other laws relating to the regulation and supervision of such associations; provided, however, that thereafter such fees shall be expended under such limitation as the Legislature may designate in the general departmental appropriation bill; such fees to be deposited in the State Treasury as a special fund to be used as and for the purposes aforesaid and are here and now appropriated for such purposes and all laws and parts of laws to the contrary are here and now expressly repealed to the extent of such conflict only." (Underscoring ours.)

You then propound the following question:

> "May we, under Section 35 of Senate Bill 135, beginning September 1st, use these fees for the purposes mentioned?"

As stated by you in your letter, the general departmental appropriation bill makes no specific reference to the use of the funds in connection with regulating, examining and doing the clerical work relating to the mutual assessment com-

Honorable Walter C. Woodward, Page 14

panies. You continue:

> "Yet, we recognize the specific au-
> thority mentioned in Section 35, and as the
> general appropriation bill, as relates to
> the Life Division, specifically authorizes
> the employment of the three mutual assess-
> ment supervisors and the secretary, we
> are of opinion that we can use these fees,
> as far as they go, toward the payment of
> the mutual assessment supervisors and the
> secretary, and thus relieve the General
> Fund of a burden to that extent."

We note a distinct difference in the language em-
ployed in Section 35 of Senate Bill 135 from that used in
Article 3920 as amended by Senate Bill 404, construed by us
in the second section of this letter. In Senate Bill 404
the Legislature states the money "shall be . . . appropriated
. . . in such manner as provided in the general appropriation
. . ." In Section 35 of Senate Bill 135, the direction
is positive and specific, and dependent upon no contingency
of future appropriation. The pertinent language is: ". . .
such fees shall be expended under such limitations as the
Legislature may designate in the general departmental appro-
priation bill; such fees to be deposited in the State
Treasury as a special fund to be used as and for the purposes
aforesaid, and are here and now appropriated for such pur-
poses . . ."

The Legislature having thus specifically directed
deposit in a special fund and appropriated the money and
having designated in the general appropriation bill three
mutual assessment supervisors and the secretary with equiv-
ocal limitation as to their salary, we are of opinion you
may use the fees paid to the Board of Insurance Commissioners
by all associations regulated by Senate Bill 135 (Mutual
Assessment Insurance Companies and Associations) to pay the
salaries of such supervisors and secretary.

Therefore, we respectfully answer your question
in the affirmative.

We wish to thank you for the complete information
furnished in your letter, which has materially aided us in

our investigation of the law applicable to the questions pro-
pounded.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall
Benjamin Woodall
Assistant

BW:FL

APPROVED AUG 23, 1939

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB.
CHAIRMAN