**GLENN et al. v. INDUSTRIAL ACCIDENT BOARD et al.**

No. 9461.

Court of Civil Appeals of Texas. Austin.

Nov. 15, 1944.

Rehearing Denied Dec. 6, 1944.

Powell, Wirtz, Rauhut, & Gideon, of Austin, and K. W. Gilmore, of Houston, for appellants.

Grover Sellers, Atty. Gen., and David Wuntch, Elton M. Hyder, Jr., and Geo. W. Barcus, Asst. Attys. Gen., for appellees.

BLAIR, Justice.

This litigation arose as an original mandamus proceeding, filed in the Ninety-Eighth district court of Travis county, to compel the Industrial Accident Board and its members to approve a compromise settlement agreement made under the Workmen's Compensation Act. Vernon's Ann. Civ.St. art. 8306 et seq. The trial court denied the mandamus.

The material facts are not in dispute. Appellant O. E. Glenn was an employe of the Humble Pipe Line Company, which carried compensation insurance with appellant Petroleum Casualty Company under the Workmen's Compensation Act. On December 26, 1941, Glenn received an injury in the course of his employment, which resulted in a permanent partial disability to his forearm immediately above the wrist, or to his hand, estimated at from 15 to 20 per cent by the examining physician. On December 26, 1943, Glenn and the Petroleum Casualty Company submitted to the Board for approval a compromise settlement agreement between them under the provisions of Sec. 12 of Art. 8307 of the Workmen's Compensation Act, which reads: "Where the liability of the association or the extent of the injury of the employé is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

The compromise agreement complied with and contained all information required by the rules and regulations of the Board in such cases. The sworn statements of both Glenn and the Humble Pipe Line Company showed the time and character of the injury, the amount of time lost by Glenn, the amount of compensation previously paid to him, and his average weekly wages. The sworn statement of the examining physician showed the nature, extent and duration of the injury, and that it had resulted in a permanent partial disability to the forearm or hand of from 15 to 20 per cent.

The settlement agreement stated that the average weekly wage of Glenn was $50.77, which under Sec. 12 of Art. 8306 carried a maximum compensation of $20 per week for total loss of the hand, or during the total disability period resulting from the injury to the arm or hand; that he lost 12⅞ weeks from work, for which he had been paid at the maximum rate of $20 per week, aggregating $248.58; and that under the agreement he would be paid $550.28 for the remaining 137½ weeks of partial permanent disability to the arm or hand. Thus the settlement agreement showed that the parties merely subtracted the compensation already paid for the 12⅞ weeks of total disability from 150 weeks, which left 137½ weeks of partial permanent disability, and then took 60 per cent of $50.77, the weekly wage, which was more than $20, the maximum compensation, and then multiplied the maximum rate of $20 by the 20 per cent partial permanent disability, which resulted in the sum of $4 per week compensation for the 137½ weeks, or the total agreed sum of $550.28; which agreement the Board was

requested to approve, but declined to do so as follows:

"The Board has finally declined to approve this compromise settlement agreement in this amount for the following reasons only:

"You have not figured the amount of compensation due for the claimant's percentage of disability in accordance with the Board's rule, which is:

"Sixty per cent of the claimant's average weekly wage ($50.77 x 60% equals $30.46), multiplied by 17.5%, being a split between 15% and 20% that the doctor gives as the claimant's remaining permanent partial disability, produces a compensation rate of $5.33 per week. 150 weeks to the hand less twelve weeks, previously paid for temporary total disability, leaves a remainder of 138 weeks. After discounting 138 weeks there remains 127¾ weeks to this specific member (hand), which multiplied by 17.5 per cent of sixty per cent of his average weekly wage $5.33 per week, amounts to $680.70.

"Should you be willing to raise the compromise settlement agreement to the above figure, the Board will be willing to approve it, otherwise, the Board has declined to approve it as presented."

Sec. 12 of Art. 8306 provides as compensation "for the loss of a hand, sixty per cent of the average weekly wage during one hundred and fifty weeks." The last part of Sec. 12 of Art. 8306 provides as follows: "In all other cases of partial incapacity, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employé, compensation shall be determined according to the percentage of incapacity, taking into account among other things any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employé, and the age at the time of injury. The compensation paid therefor shall be sixty per cent of the average weekly wages of the employé but not to exceed $20.00 per week, multiplied by the percentage of incapacity caused by the injury for such period not exceeding three hundred weeks as the board may determine."

From the recitations and calculations in the settlement agreement and in the order of the Board refusing to approve same, it clearly appears that the only issue involved is with respect to the different constructions placed upon the last quoted portion of the statute by the parties. It is the contention of appellants that the phrase "but not to exceed $20 per week" modifies the phrase immediately preceding such phrase, "sixty per cent of the average weekly wages of the employee," while appellees, the Board and its members, contend that such phrase "but not to exceed $20 per week" goes back farther and modifies the phrase "the compensation paid therefor shall be sixty per cent of the average weekly wage of the employee."

Except as to increase of compensation allowed the foregoing statutes have remained substantially unchanged since their enactment. Earlier Court of Civil Appeals decisions show substantially the same difference of construction of these statutes as is presented by the parties hereto. See Western Indemnity Co. v. Milam, 230 S. W. 825, writ refused; Maryland Casualty Co. v. Ferguson, 252 S.W. 854; Miller's Indemnity Underwriters v. Cahal 257 S. W. 957; Texas Employers' Ins. Ass'n v. Shilling, 279 S.W. 865; Dohman v. Texas Employers' Ins. Co., 285 S.W. 848, and see also Maryland Casualty Co. v. Laughlin, 5 Cir., 29 F.2d 343. A discussion of these different constructions will serve no purpose here, because the Supreme Court has now settled such differences. Beginning with the case of Texas Employers' Ins. Ass'n v. Moreno, Tex.Com.App., 277 S.W. 84, it was held that the compensation due for permanent partial incapacity to a specific member of the body is to be determined under the last paragraph of Sec. 12 of Art. 8306, above quoted; and in the case of Lumbermen's Reciprocal Ass'n v. Pollard, Tex.Com.App., 10 S.W.2d 982, 983, said section 12 is construed as follows: "If the person had a permanent partial incapacity to a member, he should receive the compensation provided in section 12 for the loss of the specific member proportioned to the percentage of incapacity which the loss sustained would bear to the total loss of the member."

In the case of Fidelity Union Casualty Co. v. Munday, Tex.Com.App., 44 S.W.2d 926, 928, the proper construction of the applicable portions of Sec. 12 with respect to the computation of compensation for the permanent partial incapacity of a hand is set at rest, as follows:

"With regard to a permanent partial loss of the use of a hand, it has been repeatedly held, in effect, that such a loss comes with-

in the purview of the above provisions and that payment of compensation each week, as there provided, is required to be made in the proportion that the use of the hand is permanently lost. Petroleum Casualty Co. v. Seale, Tex.Com.App., 13 S.W.2d 364; Lumbermen's Reciprocal Ass'n v. Pollard, Tex.Com.App., 10 S.W.2d 982; Texas Employers' Ass'n v. Maledon, Tex.Com.App., 27 S.W.2d 151. That holding was expressly approved by the Supreme Court in the Seale case, and impliedly approved in the other two. In conference with the Supreme Court, we have been authorized to declare all holdings to the contrary, in other cases, overruled.

"With regard to the temporary, total loss of the use of a hand, where no injuries except to the hand are involved, it is our opinion that such a loss is contemplated by the above-quoted provisions of the statute; and that weekly payments of compensation was meant to be provided thereby, for a period of time corresponding to the duration of such loss, at the same rate, and subject to the same time limitation, as in case of permanent loss of the use of a hand. In reaching this conclusion we rely largely on the holding in the cases cited above. The reasons given for the holding there made apply with equal force here. We are mindful that, as we construe the quoted statutory provisions, a temporary, total loss of the use of a hand for as much as 150 weeks would call for the same total amount of compensation as if the loss were permanent. But in the very nature of things the degree of incapacity for work,' which results exclusively from a temporary, total loss of the use of a hand, is, for the time being, the same as if such loss were permanent. In either case, the resulting incapacity for work is only partial. If the quoted provisions of the statute were not intended to apply to cases which involve temporary, total loss of the use of a hand, and which involve no other injuries than to the hand, then it would necessarily follow that compensation for such a loss was intended to be governed by other provisions which occur elsewhere in the Compensation Law, and under which a greater compensation would be available, if the loss endured for more than 150 weeks, than would be available if the hand were severed. Paraphrasing the language of Judge Leddy in the Seale case, it is clear, when the Workmen's Compensation Law is construed as a whole, that it was never contemplated that one employee, who has sustained a total loss of the use of a hand for a longer period of time than 150 weeks, the loss not being permanent, should receive more compensation than another employee who permanently and totally loses the use of a hand. By the same token, it would be unreasonable to suppose that the Legislature meant that an employee, who has sustained injuries to the hand, exclusively, and as a result has suffered both a temporary, total loss of the use of that member and a permanent partial loss of the use thereof, should receive compensation for the first loss * * *. It was meant that the weekly payments of compensation for the second loss should run during the portion of the provided period of 150 weeks that is not covered by payments of compensation for the first loss."

Applying the foregoing rule of construction to the facts of the instant case, the amounts of compensation agreed upon and provided for in the compromise settlement agreement are correct. That is, $20 per week is provided for loss of the hand, or during the total disability period resulting to the hand from the injury, which sum, multiplied by the 12⅜ weeks' total disability period, equals the $248.58 previously paid to the employe; and 20 per cent of the $20 weekly pay for total loss or disability equals $4 per week, which multiplied by the 137⅝ weeks' remaining compensation period, equals the $550.28 provided for in the settlement agreement as compensation for the permanent partial incapacity to the hand.

The point seems to be made for the first time on this appeal that the record does not show that a claim was filed by Glenn with the Industrial Accident Board prior to the presentation of the compromise agreement. The record sufficiently shows that such a claim was filed with the Board. Its sworn answer states that appellants should "await the order and award of said Board with respect to the claim theretofore filed by the relator (appellant) O. E. Glenn." It was stipulated by the parties herein "that the claim of O. E. Glenn v. the Petroleum Casualty Company comes within the purview of Section 12 of Article 8307, permitting the Board to approve the compromise agreement." The settlement agreement referred to Glenn as "claimant"; and the Board's order or letter re-

fusing to approve the compromise agreement refers to the claim number as being PT—48005. These facts suffice to show that a claim was filed with the Board; and that the Board had jurisdiction under Sec. 12 of Art. 8307, above quoted to pass upon the compromise agreement.

■ The point is made that the only manner provided for setting aside a ruling or decision of the Industrial Accident Board was to appeal therefrom to the District Court of the county where the injury occurred. The law is settled that no appeal will lie from an order approving or rejecting a compromise settlement agreement. Petroleum Casualty Co. v. Lewis, Tex.Civ.App., 63 S.W.2d 1066, writ refused; Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081; Traders & General Ins. Co. v. Bailey, 127 Tex. 322, 94 S.W.2d 134; 45 Tex.Jur. 701, § 237.

■ The point is made that the question of whether a compromise settlement shall be approved is left to the discretion of the Board, and that the court has no power to tell it how or in what manner to exercise that discretion. With this rule there is no disagreement, but it has no application here. The Board specifically stated that the only reason it refused to approve the settlement agreement was because "you have not figured the amount of compensation due for the claimant's percentage of disability in accordance with the Board's rule," which rule is set out in the order. Clearly the calculations of the Board are based upon its construction of the aforementioned statutes. No exercise of any discretionary power of the Board was involved. Its construction of the statutes was clearly wrong under the Supreme Court's decisions. Its sole reason for refusing to perform its duty to approve the settlement agreement was in effect that it had interpreted the statutes to authorize the method it prescribed for calculating the compensation which Glenn was entitled to receive, and the compromise settlement would not be approved unless that interpretation of the statutes was followed. We hold that under the foregoing decisions the interpretation of the statutes and the method used by appellants for the calculation of the claim of Glenn were correct. In consequence there remained no discretionary act to be performed by the Board, but only the exercise of its ministerial, or at most its administrative,

duty of approving the correctly calculated compromise settlement agreement, which duty is imposed upon the Board by Secs. 5 and 12 of Article 8307. Employers' Indemnity Corp. v. Woods, Tex.Com.App., 243 S.W. 1085.

Pleas in abatement were filed to the jurisdiction of the district court to grant a writ of mandamus against the Industrial Accident Board, or its members, to compel them to approve the compromise agreement. These pleas were taken under consideration by the court along with the trial on the merits; at the conclusion of which the court held that the Board had correctly refused to approve the settlement agreement. The court's attention was then called to the fact that it had not passed upon the pleas in abatement, whereupon the court sustained them. The effect of this action was to hold that the court had no jurisdiction to issue the mandamus prayed for, but that if mistaken in that view, then the court was of the view that the Board had correctly refused to approve the settlement agreement, or that the district court of the county where the injury occurred had jurisdiction or venue of the matter as an appeal under the Workmen's Compensation Act. Appellees, the Board and its members, do not here contend that the district court had no jurisdiction to issue the mandamus to compel the Board to approve the settlement agreement, but merely contend that jurisdiction or venue of the appeal from the order refusing to approve the settlement agreement was in the district court of the county where the injury occurred. These contentions we overruled under our foregoing holding that under the authorities cited the approval or refusal to approve a settlement agreement does not amount to an order or award so far as it concerned the right to appeal therefrom under the workmen's compensation statutes. Appellees do not urge the point on this appeal that the district court has no jurisdiction to grant a mandamus to compel the Board to approve a proper or legal settlement agreement presented to it under the provisions of the Workmen's Compensation Act.

■ Appellants were confronted, however, with the action of the court sustaining the pleas in abatement to the jurisdiction of the district court to grant a mandamus to compel the Industrial Accident Board, or its members, to perform its statutory duty to approve a proper or legal

compromise agreement under the Workmen's Compensation Act; and appellants have briefed at length the question of the jurisdiction of the district court to issue the mandamus prayed for as well as the venue of the Ninety-Eighth district court of Travis county of the suit to compel the Board to approve the settlement agreement. We hold that the Ninety-Eighth district court had both jurisdiction and venue of this suit.

A lengthy discussion of these questions of jurisdiction and venue is unnecessary. Neither the Industrial Accident Board nor either of its members is an "officer of the State Government" within the meaning of Art. 1733, which authorizes the Supreme Court alone to issue a writ of mandamus against such an officer. Nor are the Board or its members "officers of the executive departments of the government" under Art. 1735, which authorizes the Supreme Court alone to issue a writ of mandamus against such officers. The cases of Mc-Fall v. State Board of Education, 101 Tex. 572, 110 S.W. 739; Betts v. Johnson, 96 Tex. 360, 73 S.W. 4; Pickle v. Mc-Call, 86 Tex. 212, 24 S.W. 265; Herring v. Houston Nat. Exchange Bank, Tex. Civ.App., 241 S.W. 534; and Brand, Banking Commissioner, v. San Patricio County, Tex.Civ.App., 80 S.W.2d 460, writ refused, discuss fully the officer or officers to whom these statutes apply, and hold that because the boards therein under consideration, which are entirely similar to the board here involved, were state boards, did not make them or their members state officers within the meaning of the aforementioned statutes. See also Malone v. Rainey, 133 Tex. 622, 133 S.W.2d 951.

On the other hand, Art. 1909 makes district courts courts of general original jurisdiction over all causes of action for which a remedy or jurisdiction has not been provided by law or the constitution. Art. 1914 authorizes district judges to issue writs of mandamus to enforce the jurisdiction of the district court. And cases supporting the contention that the instant case falls within the general jurisdiction of the district court to issue writs of mandamus are Dean v. Campbell, Tex.Civ.App., 59 S.W. 294, holding that the district court of Travis county had jurisdiction of a suit for mandamus to compel the State Board of Pharmaceutical Examiners to issue an applicant a license; State Board of Medical Examiners v. Taylor, 103 Tex.

444, 129 S.W. 600, holding that the district court had jurisdiction to grant a mandamus to compel such board to issue a license to practice medicine; and the cases of Board of Water Engineers v. Briscoe, Tex.Civ.App., 35 S.W.2d 804, 805, writ dismissed; and State Board of Registration for Professional Engineers v. Hatter, Tex. Civ.App., 139 S.W.2d 171, each holds that the district court may issue a writ of mandamus to compel either the cancellation or issuance of such professional licenses; and that the proper venue of such a suit is in the district court of Travis county under Article 1995(20), which provides that "suits for mandamus against the head of any department of the State Government shall be brought in Travis County."

■ The workmen's compensation statutes authorize the settlement of claims for compensation and make it the duty of the Board to approve same if the agreement is made under the provisions of the statutes. The statutes do not authorize an appeal from the action of the Board either approving or refusing to approve the settlement agreement. No statute or law specifically fixes jurisdiction or venue of a suit to set aside an order approving or refusing to approve such settlement agreement. The Board refused to approve the settlement agreement solely because of the wrongful construction placed upon the statute, no matter of discretion or fact finding being involved. These facts bring the instant case within the jurisdiction and venue of the district court of Travis county under the decisions last above cited; and the facts authorize a suit for mandamus to compel the specific performance of the act which the Board should have performed under the rule stated in 38 C.J. 599, as follows: "If by reason of a mistaken view of the law or otherwise there has been in fact no actual and bona fide exercise of judgment and discretion, as, for instance, where the discretion is made to turn upon matters which under the law should not be considered, or where the action is based upon reasons outside the discretion imposed, mandamus will lie."

See also Johnson v. City Council of Galveston, 11 Tex.Civ.App. 469, 33 S.W. 150; Sanson v. Mercer, 68 Tex. 488, 5 S.W. 62, 2 Am.St.Rep. 505; Tarrant County Water Control and Improvement District No. 1 v. Pollard, 118 Tex. 138, 12 S. W.2d 137; Giles v. City of Houston, Tex. Civ.App., 59 S.W.2d 208.

The judgment of the trial court is reversed and the cause remanded to the trial court with instruction to issue the writ of mandamus as prayed for.

Reversed and remanded with instruction.