Keasler, J., filed a concurring opinion in which Hervey, J., joined.
Alcala, J., filed a dissenting opinion.
Walker, J., filed a dissenting opinion in which Richardson, J., joined.
Newell, J., dissented.
Keasler, J., filed a concurring opinion, in which Hervey, J., joined.
*832 CONCURRING OPINION
I agree with the majority's judgment and I join its opinion. I write separately to suggest a reading of the relevant statute that may, going forward, satisfy both parties' concerns.
Although the majority accurately conveys the facts of this case, I recite them in chronological order to aid the reader's understanding.
1. In May 2013, Johnson was sentenced to 10 years' confinement for forgery ("Sentence 1");
2. In August 2013, Johnson was sentenced to 10 years' confinement for possession of a controlled substance ("Sentence 2"), stacked upon Sentence 1; and
3. In September 2014, Johnson was sentenced to 40 years' confinement for delivery of a controlled substance ("Sentence 3"), concurrent to Sentences 1 and 2.
Because it is stacked upon Sentence 1, Sentence 2 does not "begin"-that is, Johnson does not begin accruing credit on Sentence 2-until either (1) Sentence 1 is served day-for-day, or (2) the parole board votes to grant him parole on Sentence 1.[1] In practical terms, this means that Johnson cannot come any closer to attaining parole eligibility on Sentence 2 until he is "paroled" on Sentence 1. He is therefore understandably eager for an as-soon-as-possible parole vote on Sentence 1.
The problem is that, per Board of Pardons and Paroles ("Board") policy, the Board will not hold a parole vote on any of his sentences until he is statutorily eligible for release on Sentence 3-his longest or "controlling" sentence.[2] This will not occur until December 2017, nearly four years after he became statutorily parole eligible on Sentence 1 (January 2014). While this delay would seem to have potentially deprived Johnson of four years of accrued time towards Sentence 2, the Board's stated reason for the delay is sensible enough:
The decision to delay the vote promotes efficiency; it means that the Board need not repeatedly review the same inmate for parole across a range of non-controlling, concurrent sentences. In other words, this policy ... minimizes the burden on the parole system by reducing the need to prepare for and to conduct inefficient and repetitive votes where the benefit of such a vote is highly speculative.[3]
In essence, the Board seeks to avoid what is sometimes called "paper parole"-a parole determination that would not result in an actual, physical release of the inmate from TDCJ custody. Johnson, meanwhile, retorts that if "his second sentence [had] commence[d]" in January 2014 (when he became statutorily eligible for release on Sentence 1), he would be eligible for actual, physical release in a matter of months, *833 rather than years.[4] As it currently stands, even if he is given parole on Sentences 1 and 3 in December 2017, that decision will only mark the commencement of Sentence 2. He will not be physically released from TDCJ custody until he becomes statutorily eligible for, and is paroled on, Sentence 2.
Both parties seem to think that the Board's impending parole vote on Sentences 1 and 3 can be only prospective in nature-that is, any vote to grant him parole would determine only the prospective commencement date of Sentence 2. I am not convinced that the Board's impending vote need be so limited.
Government Code Section 508.150, the statute governing "Consecutive Felony Sentences" in parole matters, states that the Board "shall designate during each sentence the date ... the inmate would have been eligible for release on parole if the inmate had been sentenced to serve a single sentence."[5] This statute seems to allow-and may, by dint of the word "shall," require-the Board to make retroactive parole determinations in the very limited context of consecutive sentences.
If this interpretation of Section 508.150 is the correct one, both parties may have their druthers in this case. The Board may wait until December 2017 to conduct a single parole determination on all of Johnson's eligible sentences in one fell swoop. It may also, at that time, designate the date upon which Johnson "would have been eligible for release on parole if [he] had been sentenced to" but one sentence.[6] That is, the Board may retroactively consider Johnson for "parole" on Sentence 1 as though they were considering him in January 2014. If he is determined to have been an unsuitable candidate in January 2014, the Board may go on to determine the date that he "would have been" so suitable, and grant him "parole" as of that date-or it may indicate that he was not a suitable candidate at any time during that period.[7]
Johnson, if he is retroactively granted parole in this manner, will receive all the credit towards Sentence 2 that he currently claims to have been unfairly kept from him. If, on the other hand, he is denied retroactive parole after appropriate review, he will not have been deprived of anything the law currently entitles him to.[8] After all, Johnson himself acknowledges that "parole is a privilege, rather than a right."[9] But he will at least have received review. In this respect, the unusual circumstances of his sentencing will not cause him to be treated any differently than other inmates, at least for parole purposes.
Because Section 508.150 requires only that consecutive-sentence parole determinations be made "during each sentence,"[10] until Sentence 1 is served day-for-day, the Board cannot yet be said to have run afoul of the statute in this case. And as I understand it, the majority says only that Parole Board Rule 145.3(4) does not clearly impose upon the Board a legal duty to conduct *834 a vote sooner than that.[11] I do not disagree that this is the most reasonable construction of the rule. I simply note that if, at its impending vote, the Board elects to make a retroactive parole determination in the manner that I have just described, all of Johnson's stated concerns will thereby be addressed to his satisfaction.
With these thoughts, I join the majority.
Alcala, J., filed a dissenting opinion.
DISSENTING OPINION
Can the parole board disregard applicable statutes without any judicial oversight? After today's majority opinion, the answer to this question is "Yes." Today's holding definitively tells the parole board that it may wholly disregard the Legislature's procedural requirements without any judicial oversight by this Court. I respectfully disagree with this holding. Although I agree that almost all of the parole board's decisions are wholly discretionary and not subject to judicial oversight, in rare cases such as this one involving mandatory statutory procedural requirements, I would grant either habeas or mandamus relief to Morris Landon Johnson II, applicant. I would hold that, when, as here, an inmate is serving two sentences concurrently but he also has a yet-to-commence third sentence that will be served consecutively to the shorter of his concurrent sentences, the parole board must consider him for parole on his shorter concurrent sentence at the point at which he becomes statutorily eligible for parole on that sentence. Here, by delaying a vote on applicant's parole for his first of two stacked sentences until he is eligible for parole on his much longer concurrent sentence, the parole board's policy deprives him of the opportunity to receive parole "on paper" for his first stacked sentence, which, if granted, would allow him to commence serving his second stacked sentence sooner. This policy by the parole board is arbitrary and presents a real possibility that applicant will be confined in prison longer than he otherwise would have been had he been timely considered for parole on the first stacked sentence. Under these circumstances, I agree with applicant's contention that he is entitled to relief, either through a post-conviction writ of habeas corpus or, alternatively, through the vehicle of mandamus. I, therefore, respectfully dissent. I explain my reasoning by reviewing the factual and procedural background, the applicable statutory requirements for parole eligibility, the merits of applicant's request for habeas relief, and alternatively, the merits of relief through mandamus.
I. Background
Here, applicant has three sentences for which he is confined in prison. Although he has become eligible for parole on one of those sentences, the parole board has not considered him for that parole, even though he has been eligible for that consideration for almost four years.
1. On May 16, 2013, applicant was sentenced to ten years in prison for forgery. He became statutorily eligible for parole on this sentence on January 5, 2014.
2. On August 13, 2013, applicant was sentenced to ten years in prison for possession of a controlled substance. The trial court ordered this sentence to run consecutively to the forgery sentence. Applicant has yet to commence serving this sentence. This sentence will *835 commence either when applicant reaches calendar-time on the forgery sentence, or when he is granted parole on the forgery sentence, whichever comes first. See TEX. GOV'T CODE § 508.150(b).
3. On September 17, 2014, applicant was sentenced to forty years in prison for delivery of a controlled substance. The trial court ordered this sentence to run concurrently with the other two sentences. Applicant becomes statutorily eligible for parole on this sentence on December 6, 2017.
Applicant alleges that, although he has been eligible to be considered for parole on his forgery offense for four years, the parole board has declined to consider him for parole during that time. The Texas Department of Criminal Justice (TDCJ) has filed a response explaining that, under circumstances in which an inmate is serving more than one concurrent sentence, it is the parole board's policy to delay consideration of an inmate's parole on an otherwise eligible offense until he also becomes eligible for parole on his "controlling" offense, which is the offense with the longest sentence.
II. Statutes Require Each Sentence to Have Its Own Parole Eligibility Date
I agree with applicant's contentions that the parole board's refusal to timely consider him for parole on his forgery sentence runs afoul of mandatory provisions in the Government Code that require timely parole consideration under these circumstances, and that the board's refusal to timely consider him for parole on the forgery conviction unfairly deprives him of the opportunity to begin serving his consecutive sentence for drug possession. See TEX. GOV'T CODE §§ 508.145(f), 508.150(a), (b). A review of the relevant provisions in the Government Code shows that each conviction must have its own parole eligibility date and be treated separately for purposes of determining parole.
The Government Code generally provides that an inmate is "eligible for release on parole" when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less. See TEX. GOV'T CODE § 508.145(f). The plain language of this provision requires that parole eligibility will be calculated with respect to each sentence that has been imposed against a defendant. Consistent with the statutory language of this provision, the Board has enacted a policy that provides that "[a]n offender will be considered for parole when eligible," so long as he does not fall within certain categories of disciplinary misconduct. 37 TEX. ADMIN. CODE § 145.3(4). Under these terms in the statutory language and the board's policy, the board must determine a parole eligibility date as to each sentence and then consider an offender for parole when he is eligible for parole under that date. Nothing in these provisions permits the parole board to delay a vote on an otherwise eligible sentence, as here with respect to applicant's forgery sentence, under the rationale that an inmate is also serving another longer sentence for which he is not yet eligible for parole.
More specifically, when a trial court has ordered that sentences must be cumulated, the Government Code requires the parole board to calculate a parole-eligibility date for each sentence and to consider the inmate for parole on each sentence. See TEX. GOV'T CODE § 508.150(a), (b). Section 508.150(a) states, "If an inmate is sentenced to consecutive felony sentences ...
*836 a parole panel shall designate during each sentence the date, if any, the inmate would have been eligible for release on parole if the inmate had been sentenced to serve a single sentence." Id. § 508.150(a). The statute further provides that a consecutive sentence will cease to operate either when the actual calendar time served by the inmate equals the sentence imposed by the court, or on the date a parole panel designates as the date the inmate "would have been eligible for release on parole if the inmate had been sentenced to serve a single sentence." Id. § 508.150(b)(2). Section 508.150 also states that a parole panel "may not consider consecutive sentences as a single sentence for purposes of parole." Id. § 508.150(c).
The Legislature's statutory scheme addressing parole consideration for consecutive sentences clearly provides for separate and timely consideration of an inmate's parole eligibility as to each sentence in a series of stacked sentences and permits an inmate to be paroled "on paper" for his first stacked sentence so that he may begin serving the second stacked sentence. Nothing within any of these provisions suggests that the parole board has the discretion to significantly delay consideration of an inmate's parole eligibility on a stacked sentence until he also becomes parole-eligible on a much longer concurrent sentence, which is the situation here. In light of these statutory provisions, I agree with applicant's contention that the parole board was required to consider him for parole on his forgery sentence when he became eligible for it and that the almost four-year delay in that consideration violates statutory requirements.
I disagree with the response by TDCJ indicating that it is always proper for the parole board to consider an inmate for parole only after he becomes parole-eligible on his longest, or "controlling" sentence. TDCJ has explained that this policy applies even to inmates, such as applicant, who have an additional stacked sentence that cannot commence until the shorter of the active concurrent sentences has ceased to operate. As explained above, this policy fails to conform to the Legislature's statutory requirements that require a parole eligibility date as to each sentence and conflicts with the parole board's own requirements for timely parole consideration for each sentence. It also fails to conform to the statutory provisions that contemplate timely consideration of parole for each sentence in a series of stacked sentences and the possibility of an inmate receiving parole "on paper" as to his first stacked sentence so that he may commence serving his second stacked sentence sooner.
All of the relevant statutory provisions described above indicate that an inmate serving stacked sentences should be timely considered for parole as to each sentence upon becoming eligible. I, therefore, conclude that the parole board has no discretion to disregard these statutory provisions requiring consideration of an inmate's parole when he become eligible for parole on each sentence.
III. State Habeas Relief is Appropriate To Remedy the Statutory Violation
Despite the parole board's clear violation of mandatory requirements that compel timely parole consideration under these circumstances, this Court's majority opinion denies habeas relief on the basis that applicant's claim is not cognizable. As the basis for its conclusion, this Court's majority *837 opinion reasons that applicant's claim does not implicate any constitutional right because he has no protected liberty interest in parole attainment, and it further reasons that his claim does not implicate any "fundamental right" because the right to be considered for parole is not a systemic requirement under the framework set forth in Marin v. State , 851 S.W.2d 275 (Tex. Crim. App. 1993). Thus, this Court's majority opinion concludes that applicant's claim asserts a mere statutory violation that is not cognizable on habeas. See Ex parte Douthit, 232 S.W.3d 69, 72 (Tex. Crim. App. 2007) ; Ex parte McCain, 67 S.W.3d 204, 206 (Tex. Crim. App. 2002). Contrary to the majority opinion's determination, I conclude that the type of statutory requirements involved in this case rise to the level that are appropriate for state-habeas relief.
In this Court's unanimous 2016 decision in Ex parte Sepeda , this Court determined that a violation of a Government Code provision relating to an inmate's consideration for parole was appropriate for state-habeas relief, even though it did not involve a constitutionally protected liberty interest. 506 S.W.3d 25, 26-27 (Tex. Crim. App. 2016) (discussing TEX. GOV'T CODE § 508.1411 ). This Court addressed the parole board's failure to adequately explain its reasons for denying parole to an inmate, as required by statute. Id. Although it agreed with Sepeda that the parole board had previously failed to comply with the statute, this Court ultimately denied relief to Sepeda because, by the time that this Court issued its decision, the record showed that the "Board ha[d] revised its denial letter to conform to the changes made to the statute by the legislature, which required the Board to state the reasons why the individual inmate was denied parole." Id. at 29. In explaining the thrust of Sepeda's complaint, this Court said, "[The] reasons for denying or approving parole are within the unfettered discretion of the Board, and [Sepeda] has not claimed otherwise. But [Sepeda] has a statutory right to be informed of the specific reasons that formed the basis for the denial of his parole." Id. at 28. This Court's opinion stated, "We hold that a writ of habeas corpus is the proper remedy by which to compel the Board ... to provide a parole-denial letter in compliance with Texas Government Code § 508.1411 and that § 508.1411 does not create a liberty interest protected by due process." Id. at 26-27. By noting that the statute did not create a liberty interest protected by due process, this Court necessarily found no federal constitutional right to warrant habeas relief. But by noting that habeas relief was appropriate, this Court implicitly held that the statutory violation rose to the level equivalent of a constitutional violation or a violation of a fundamental right that was appropriate for state habeas relief. Id.
Today, this Court's majority opinion overrules Sepeda by reasoning that complaints pertaining to the parole board's violations of the Government Code do not implicate constitutional rights or absolute rights or prohibitions, which it suggests would be required for the claim to be cognizable on habeas.[1] In support, the majority opinion cites to certain cases by this Court that have held that a claim asserting a bare statutory violation is not cognizable *838 on habeas. See, e.g. , Douthit , 232 S.W.3d at 72 ; McCain , 67 S.W.3d at 209 ; Ex parte Sanchez , 918 S.W.2d 526, 527 (Tex. Crim. App. 1996). Although that principle may be generally true with respect to most statutory-based claims, it is also true that this Court has recognized a limited right to habeas relief for some statutory violations that involve fundamental rights or matters that are essentially of the same quality as constitutional rights. This Court has demonstrated vacillating views on this subject over the years, with some cases holding that certain statutory challenges are cognizable on habeas,[2] and others holding that they are not.[3] There is no clear unifying principle in the Court's approach in these cases. Rather, these fluctuations appear to be a product of this Court's shifting philosophy regarding how rigid or relaxed habeas cognizability rules should be at any given time. In essence, the Court's approach to such questions has been the result of a policy judgment about the purpose and nature of habeas relief, rather than a result of some change to our statutory or constitutional authority to grant habeas relief.[4]
This Court's majority opinion explains that Sepeda is inconsistent with our decision *839 in Ex parte Douthit , which is true, but only because Douthit was a flip-flop on the same issue from previous precedent. See Douthit , 232 S.W.3d at 74. Douthit sought habeas relief on the basis that when he pleaded guilty to capital murder, the applicable mandatory statutes did not allow a defendant to waive the right to a jury trial in a capital murder case. Id. at 70. This Court acknowledged that prior to Douthit , cases such as Ex parte Miller , 696 S.W.2d 908 (Tex. Crim. App. 1985), permitted habeas review of fundamental defects stemming from violations of mandatory statutes. Remarkably similar to today's majority opinion's reasons for overturning Sepeda , the Douthit court said,
[W]e should not overturn precedent lightly. But "[w]hen older precedent conflicts with a new decision that is found to be more soundly reasoned, we may resolve the inconsistency in favor of the more soundly reasoned decision." As we explained in Paulson v. State [, 28 S.W.3d 570 (Tex. Crim. App. 2000) ], the goals of the doctrine of stare decisis include "promot[ing] judicial efficiency and consistency, encourag[ing] reliance on judicial decisions, and contribut[ing] to the integrity of the judicial process." And if a prior decision "was poorly reasoned or has become unworkable, we do not achieve these goals by continuing to follow it."
Id. at 74 (citations omitted). The precise question involved in the instant case has plagued this Court's decisions for decades and, depending on the year, these types of statutory violations are cognizable on habeas, then they are not, then they are, then, apparently after today, they are not.
History should tell this Court that this hard-line approach that no statutory violation is ever cognizable on state habeas is unworkable and that this approach has never withstood the test of time. This hard-line approach is untenable particularly when, as here, a defendant is left without any opportunity to litigate or remedy his valid complaint about the violation of mandatory statutory provisions. A defendant who has a valid complaint that the parole board will not even consider him for parole on a case for which he is parole eligible may have to serve additional time in prison merely because this Court will not act on his claim that the parole board has violated mandatory statutory requirements. This continued disregard of applicable mandatory statutory provisions by the parole board is precisely why this Court created this limited right of review in Sepeda , and why that case was correctly decided by a unanimous decision of this Court. I, therefore, would not overturn the precedent in Sepeda that permits consideration of complaints about violations of statutory-based non-discretionary acts by the parole board under limited circumstances in which the board's violation could lengthen an inmate's term of confinement and the inmate has no other trial or appellate remedy. I would hold that this is one of those rare cases in which the statutory right at issue is cognizable on state habeas and I would grant relief to applicant.
IV. Alternatively, Mandamus Relief is Appropriate
Even assuming that this Court's majority opinion correctly concludes that applicant's claim is not cognizable in a post-conviction habeas proceeding, I respectfully disagree with its assessment that his claim cannot be considered through the vehicle of mandamus due to the lack of a clear right to relief. In other situations, this Court has treated matters that would not otherwise be cognizable on habeas as *840 presenting a viable basis for mandamus relief. See, e.g., In re Daniel , 396 S.W.3d 545, 549 (Tex. Crim. App. 2013). And, as I have explained above, the relevant statutes and board policies make clear that the parole board has no discretion to treat applicant's forgery and drug-delivery sentences as a single sentence for purposes of determining his parole eligibility-rather, each sentence triggers a distinct parole eligibility date and must be considered independently. See TEX. GOV'T CODE § 508.145(f) ; 37 TEX. ADMIN. CODE § 145.3(4). This is particularly true in the context of an inmate who has a yet-to-commence consecutive sentence. The Government Code expressly contemplates the possibility of release on parole "on paper" as to a defendant's first stacked sentence so that he may commence serving his second stacked sentence sooner. TEX. GOV'T CODE § 508.150(a), (b)(2). As an alternative to habeas relief, applicant's complaint constitutes an appropriate basis for mandamus relief because, here, applicant has a clear right to relief under the relevant statutes and board policies and no other adequate remedy at law. See In re Bonilla, 424 S.W.3d 528, 533 (Tex. Crim. App. 2014) (a clear right to relief is shown when the facts and circumstances dictate but one rational decision under unequivocal, well-settled, and clearly controlling legal principles; an issue of first impression can sometimes qualify for mandamus relief); In re State ex rel. Weeks, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013). Alternatively, therefore, if habeas relief is not permitted due to this Court's decision to overrule Sepeda , I would grant applicant mandamus relief.
V. Conclusion
The pertinent statutes and regulations do not permit the parole board to calculate a single parole eligibility date for multiple offenses, nor do they permit the board to delay a parole vote on an eligible offense until an inmate is also parole eligible on a much longer concurrent sentence. By refusing to consider applicant for parole based on his eligibility date for his ten-year forgery sentence, and by instead delaying a parole vote for that offense until he is eligible for parole on his forty-year sentence, the parole board has deprived applicant of the possibility of beginning to serve his cumulated ten-year sentence for drug possession. This is an arbitrary deprivation of applicant's statutory right to be considered for parole on each offense after a specified period, and it may result in him being imprisoned for longer than other similarly situated inmates serving single sentences under materially identical circumstances. Given these circumstances, I cannot agree with the Court's conclusion that applicant is entitled to neither habeas nor mandamus relief. I, therefore, respectfully dissent.
Walker, J., filed a dissenting opinion in which Richardson, J., joined.
DISSENTING OPINION
The Court today holds that mandamus relief is not warranted for Applicant, Morris Landon Johnson, II, who is seeking relief from a parole policy of holding a parole vote on all of an inmate's concurrent sentences only when the inmate's controlling sentence is eligible for parole. In my view, the parole authorities are failing to perform a ministerial duty imposed by one of the Board of Pardons and Paroles's own valid regulations, the policy is improper, and Applicant should be granted mandamus relief. Because the Court does not grant relief, I respectfully dissent.
I-Mandamus Jurisdiction
Before I address whether this Court should grant mandamus relief in this case, *841 I first address whether the Court has the jurisdiction to do so. The Texas Constitution and the Code of Criminal Procedure provide that we have the power, in criminal law matters, to issue writs of mandamus. Tex. Const. art. V, § 5 (c); Tex. Code Crim. Proc. Ann. art. 4.04, § 1 (West 2015 & Supp. 2016). However, Government Code section 22.002(c) provides that the Texas Supreme Court has exclusive mandamus jurisdiction over executive officers of the state. Tex. Gov't Code Ann. § 22.002(c) (West 2004 & Supp. 2016). Does this section of the Government Code preclude us from exercising mandamus jurisdiction over the Board of Pardons and Paroles?
Although the parole authorities in this case are within the executive department of the state, the Texas Supreme Court has construed section 22.002(c) to grant it exclusive mandamus jurisdiction against specifically identified constitutional executive officers, namely, the Lieutenant Governor, the Secretary of State, the Comptroller of Public Accounts, the Treasurer, the Commissioner of the General Land Office, and the Attorney General. A & T Consultants, Inc. v. Sharp , 904 S.W.2d 668, 672 (Tex. 1995). These executive officers, unlike every State official at every level, are the State's "chief administrative officers-the heads of State departments and agencies who are charged with the general administration of State affairs." In re Nolo Press/Folk Law, Inc. , 991 S.W.2d 768, 776 (Tex. 1999).
Thus, the Texas Supreme Court does not have original mandamus jurisdiction against other state officials like court reporters,[1] or county officers and district officers (other than district judges).[2] It does not have original mandamus jurisdiction against college administrators.[3] Indeed, the Texas Supreme Court has stated that its original mandamus jurisdiction does not run against state boards and commissions. Nolo Press/Folk Law, Inc. , 991 S.W.2d at 776 ; Superior Oil Co. v. Sadler , 458 S.W.2d 55, 56 (Tex. 1970).[4] It does not cover the Unlicensed Practice of Law Committee,[5] the Governor,[6] any board that has the Governor as a member,[7] the State *842 Board of Medical Examiners,[8] and the Industrial Accident Board.[9] Most importantly for the case before us, prison commissioners have been held to be outside the ambit of the statute. Herring v. Hous. Nat'l Exch. Bank , 241 S.W. 534, 540 (Tex. Civ. App.-Galveston 1922), rev'd on other grounds , 113 Tex. 264, 253 S.W. 813 (Tex. 1923). Therefore, section 22.002(c) of the Government Code does not preclude us from exercising mandamus jurisdiction against the Board of Pardons and Paroles, and I believe that we have the authority to issue a writ of mandamus in this case.
II-Is Mandamus Available?
To obtain mandamus relief, a relator must establish that no other adequate remedy at law is available and that the act he seeks to compel is ministerial, rather than discretionary, in nature. Dickens v. Court of Appeals for the Second Supreme Judicial Dist. of Tex. , 727 S.W.2d 542, 548 (Tex. Crim. App. 1987).
II-A-No Adequate Remedy
What remedy is available to Applicant to compel the Board to consider him for parole? The decision to delay parole consideration on the forgery sentence until the controlling delivery of a controlled substance sentence is eligible is not a judicial judgment or order from which Applicant can appeal. The Board's regulations do not contain any provision by which an eligible inmate can initiate parole consideration. However, the regulations do provide for a type of "appeal." Under Rule 145.17, an inmate has the ability to request a "special review" of a parole panel's decision to deny parole or mandatory supervision. 37 Tex. Admin. Code § 145.17 (2017) (Tex. Bd. of Pardons and Paroles, Action upon Special Review-Release Denied). Obviously, however, this provision is inapplicable if an inmate has not been denied parole or mandatory supervision. A denial cannot occur if a parole hearing does not occur; therefore, this appeal provision is not available if a hearing has yet to occur. Thus, there is no adequate remedy under the Administrative Code for an inmate, such as Applicant, who is not being considered for parole. Additionally, I agree with the majority's conclusion that Applicant cannot compel consideration by means of a writ of habeas corpus, but I disagree with the analysis and the decision to overrule Ex parte Sepeda.[10] Consequently, he has no avenue to parole consideration except through mandamus.
II-B-Ministerial Duty
The next requirement for mandamus is that the act Applicant seeks to compel is ministerial, rather than discretionary. An act is ministerial if the actor has a duty clearly fixed and required by law to do the act, and the law does not authorize the exercise of discretion or judgment in determining whether the act is to be performed.
*843 Smith v. Flack , 728 S.W.2d 784, 789 (Tex. Crim. App. 1987).
Applicant points us to sections 508.145(f), 508.150(b)(2), and 508.150(a) of the Government Code and 37 Tex. Admin. Code § 145.3(4) (2017) (Tex. Bd. of Pardons and Paroles, Policy Statements Relating to Parole Release Decisions by the Board of Pardons and Paroles). I believe Rule 145.3(4) is controlling, and I will address it directly. The provision at issue here, Rule 145.3(4), is not a statute. However, "[v]alid rules and regulations promulgated by an administrative agency acting within its statutory authority have the force and effect of legislation." Lewis v. Jacksonville Bldg. and Loan Ass'n , 540 S.W.2d 307, 310 (Tex. 1976). Agencies are bound to follow their own valid and subsisting rules and procedures. S. Clay Prods., Inc. v. Bullock , 753 S.W.2d 781, 783 (Tex. App.-Austin 1988, no writ) (citing Gulf Land Co. v. Atl. Ref. Co. , 134 Tex. 59, 131 S.W.2d 73, 79 (1939) ). If an agency fails to follow the clear, unambiguous language of its own regulation, a court must reverse the agency's action as arbitrary and capricious. Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC , 324 S.W.3d 95, 104 (Tex. 2010) (quoting Rodriguez v. Serv. Lloyds Ins. Co. , 997 S.W.2d 248, 255 (Tex. 1999) ). Therefore, because a regulation has the force and effect of law, it can impose a duty clearly fixed and required by law to form the basis for a writ of mandamus.
Does the regulation at issue impose a duty clearly fixed and required by law, without any contrary authorization for the exercise of discretion or judgment? Rule 145.3(4) provides:
An offender will be considered for parole when eligible and when the offender meets the following criteria with regard to behavior during incarceration.
(A) Other than on initial parole eligibility, the person must not have had a major disciplinary misconduct report in the six-month period prior to the date he is reviewed for parole; which has resulted in loss of good conduct time or reduction to a classification status below that assigned during that person's initial entry into TDCJ-CID.
(B) Other than on initial parole eligibility, at the time he is reviewed for parole the person must be classified in the same or higher time earning classification assigned during that person's initial entry into TDCJ-CID.
(C) If any offender who has received an affirmative vote to parole and following the vote, notification is received that the offender has been reduced below initial classification status or has lost good conduct time, the parole decision will be reviewed and revoted by the parole panel that rendered the decision.
(D) A person who has been revoked and returned to custody for a violation of the conditions of release to parole or mandatory supervision will be considered for release to parole or mandatory supervision when eligible.
(E) An offender who is otherwise eligible for parole and who has charges pending alleging a felony offense committed while in TDCJ, and for which a complaint has been filed with a magistrate of the State of Texas, any facility under its supervision, or a facility under contract with TDCJ will not be considered for release to parole.
(F) An offender who is otherwise eligible for release and meets the criteria for Medically Recommended Intensive Supervision (MRIS) as required by Texas Government Code, Section 508.146, may be considered for release on parole.
*844 37 Tex. Admin. Code § 145.3(4). Under this regulation, an offender will be considered for parole when two conditions are met: (1) the offender is eligible, and (2) none of the exceptions of subsections (A)-(F) apply. Subsections (A) and (B) do not apply "on initial parole eligibility." Id. § 145.3(4)(A), (B). Subsection (C) and (D) apply to inmates who not only have already had parole votes, but affirmative ones granting parole release. See id. § 145.3(4)(C), (D). Because Applicant has not had a parole vote at all for his forgery sentence, neither of those two situations apply. Subsection (E) forecloses a parole vote altogether for an inmate that has a pending charge for a felony offense committed while in TDCJ. Id. § 145.3(4)(E). Subsection (F) involves parole voting for medically recommended intensive supervision. Id. § 145.3(4)(F). Neither subsection (E) nor (F) apply because there are no indications that Applicant has a pending charge or that he has a need for medically recommended intensive supervision. Therefore, for an inmate such as Applicant who is simply up for his first parole vote, none of the delay situations apply, and the "offender will be considered for parole when eligible." Id. § 145.3(4). Because Rule 145.3(4) imposes a duty clearly fixed and required by law, without any contrary authorization for the exercise of discretion or judgment, the duty is ministerial. And because no adequate remedy at law exists for violations of this ministerial duty, mandamus relief is available.
III-"When Eligible"
The majority finds that mandamus relief is not warranted by construing "when eligible" to mean that an offender is eligible for parole only when he has reached the parole eligibility date on the longest concurrent sentence. The majority supports this conclusion by finding that the policy is actually an administrative construction not made in anticipation of litigation, which is entitled to deference. I agree that the construction was not made in anticipation of litigation. The paper trail for the policy begins and ends in the very documents created for the litigation before the Court today-the affidavits submitted by TDCJ and the brief TDCJ filed with this Court. Clearly, they were not made in anticipation of litigation, but as a part of and in response to litigation. In my view, if the policy is an administrative interpretation of Rule 145.3(4), it is a convenient litigating position or a post hoc rationalization advanced by TDCJ, seeking to defend its past action against attack. See Christopher v. SmithKline Beecham Corp. , 567 U.S. 142, 155, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012). Deference is unwarranted in such cases. Id.
Additionally, the majority's construction adds words to the rule which simply do not exist in a plain reading. Rule 145.3(4) says that "an offender will be considered for parole when eligible," not that "an offender will be considered for parole when eligible on the longest concurrent sentence." This construction would also lead to an absurd result, because it has the potential to violate section 508.150(a). That provision states:
If an inmate is sentenced to consecutive felony sentences under Article 42.08, Code of Criminal Procedure, a parole panel shall designate during each sentence the date, if any, the inmate would have been eligible for release on parole if the inmate had been sentenced to serve a single sentence.
Tex. Gov't. Code Ann. § 508.150(a) (West 2012 & Supp. 2016). Under this statute, for inmates serving consecutive sentences, the *845 parole panel is required to designate during each consecutive sentence the date he would have been paroled as if he were serving only that sentence (a "paper parole"). However, under the policy under consideration in this case, if the currently operating consecutive sentence is shorter than the parole eligibility date of the longest concurrent sentence, that shorter consecutive sentence will not be considered for parole because the inmate will not have reached parole eligibility on the longest concurrent sentence. The shorter consecutive sentence therefore will be fully served before the parole eligibility date of the longest concurrent sentence, and the parole panel will not have designated, during that consecutive sentence, the date, if any, that the inmate would have been eligible for release on parole. Thus, to save the majority's construction that extends the plain language to "an offender will be considered for parole when eligible on the longest concurrent sentence," we would have to also add "unless the offender has a currently operating consecutive sentence that would be fully served before the offender is eligible for parole on the longest concurrent sentence." For this Court to do so, in order to justify the delay in Applicant's parole consideration on his forgery sentence, we would usurp the legislative power delegated to the parole authorities to write their own regulations.
To me, there are only two possible readings of the plain meaning of the rule. One way to read it is that "when eligible" means when eligible for actual, physical release to parole. This construction, on first sight, seems compelling. However, it falls apart when an inmate is serving consecutive sentences. Such an inmate would not be eligible for actual, physical release on parole until he is eligible on the last sentence in the stack of consecutive sentences. Tex. Gov't Code Ann. § 508.150(c)(2) (West 2012 & Supp. 2016) ("A parole panel may not ... release on parole an inmate sentenced to serve consecutive felony sentences before the date the inmate becomes eligible for release on parole from the last sentence imposed on the inmate."). Thus, for the first sentence in the stack, at that sentence's parole eligibility date he would not be considered for parole, because he is not eligible for actual, physical release. He must serve the first sentence day-for-day, until fully served, and then the next sentence in the stack would begin to operate. If that sentence is not the last sentence in the stack, he must serve that sentence in full, too, because again he would not be eligible for actual, physical release. And so on until he begins to serve the final, last sentence in the stack. Only then is he eligible for actual, physical release. An inmate serving five twenty-year consecutive sentences will not receive a parole hearing until he has already served four of the five consecutive sentences day-for-day, which would be a total of eighty years, and then he would become eligible on the last of the five sentences. Just like the majority's interpretation of the rule, this reading of the rule-that "when eligible" means when eligible for actual, physical release-would fail to satisfy the demands of section 508.150(a) and is unreasonable.
The only other way to interpret the rule, consistent with the plain meaning of the words used-and the way that makes sense to me-is to read "when eligible" to mean when eligible for parole on each sentence. This reading satisfies section 508.150(a) because the parole panel would review each consecutive sentence for parole during each consecutive sentence, regardless of the length of any concurrent sentences.
*846 IV-Conclusion
According to the affidavits submitted by TDCJ in this case, Applicant is eligible for parole on his forgery sentence and has been since January 5, 2014. Consequently, by the language of the regulation, Applicant should have been considered for parole at that time, and his parole review on his forgery sentence is long overdue. The regulation requiring consideration for parole when an inmate is eligible for parole has not been complied with, and, accordingly, the policy cited to support such delay is improper. Therefore, because Applicant lacks an adequate remedy at law by which he can compel his parole review, and because there is a ministerial duty imposed by regulation to consider an inmate for parole when that inmate is eligible, mandamus relief is warranted in this case. Because a majority of this Court holds otherwise, I dissent.

Tex. Code Crim. Proc. art. 42.08 ; Tex. Gov't Code § 508.150 ; Ex parte Kuester , 21 S.W.3d 264, 270 (Tex. Crim. App. 2000).

Brief for the Texas Department of Criminal Justice at 1-3; cf. Ex parte Mabry , 137 S.W.3d 58, 63 (Tex. Crim. App. 2004) (Keasler, J., concurring) ("When an inmate has multiple convictions, he will have one conviction which governs his release date.... It is the conviction that will keep the prisoner in custody for the greatest amount of time.").

Brief for the Texas Department of Criminal Justice at 4-5.

Brief for Morris Landon Johnson II at 7.

Tex. Gov't Code § 508.150(a).

Id.

See id.

See Ex parte Retzlaff , 135 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("[A]n inmate does not have a statutorily vested liberty interest in being released on parole.").

Brief for Morris Landon Johnson II at 4.

See Tex. Gov't Code § 508.150.

Majority Opinion at 830-31.

Even as recent as a few weeks ago, this Court has relied on Sepeda in a unanimous per curiam order remanding a case to the habeas court for findings related to the parole board's stated reasons for refusing to parole an inmate. See Ex parte Skinner , No. WR-26,955-06, 2017 WL 4401909, at *1 (Tex. Crim. App. Oct. 4, 2017) (per curiam) (not designated for publication). In its remand order, this Court said, "[Skinner] complains that the Parole Board's stated reasons for refusing his release to parole deny him due process and do not comply with Section 508.1411 of the Government Code. This issue was addressed by this Court in Ex parte Sepeda. " Id. Relying on our decision in Sepeda , this Court remanded Skinner's application for factual development because "[Skinner] has alleged facts that, if true, might entitle him to relief." Id. Of course, Skinner is not a binding decision by this Court, but it does exemplify this Court's continued adherence and application of Sepeda until today's sudden departure from the rule of that case.

This Court has held on multiple occasions that some statutory challenges are cognizable on habeas. See, e.g., Ex parte Thompson , 641 S.W.2d 239, 240 (Tex. Crim. App. 1982) (granting habeas relief on statutory claim regarding trial court's failure to conduct an examining trial for juvenile defendant, in violation of the Texas Family Code); Ex parte McIver, 586 S.W.2d 851, 854 (Tex. Crim. App. 1979) (granting habeas relief on claim that jury had assessed punishment that did not comport with requirements for probated sentences in the Code of Criminal Procedure); Ex parte Rawlins , 158 Tex.Crim. 346, 255 S.W.2d 877, 877 (Tex. Crim. App. 1953) (granting habeas relief for failure to provide statutorily required counsel for jury waiver); see also Ex parte McCain , 67 S.W.3d 204, 211, 214 (Tex. Crim. App. 2002) (Holcomb, J., dissenting) (observing that this Court's longstanding precedent has held that "some defects, even though they are 'just' statutory defects, are so egregious that they are cognizable on habeas").

This Court has held on multiple occasions that some statutory challenges are not cognizable, but in almost all of those cases the defendant was complaining about a matter on which he could have obtained relief in his direct appeal if he had asserted the challenge, which is different from the instant case in which the defendant is left without any remedy if habeas or mandamus relief is denied. See , e.g. , Ex parte Banks , 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (denying habeas relief on claim regarding improper exclusion of juror on statutory grounds; that issue "does not involve jurisdictional defects nor [ ] fundamental constitutional considerations.... As such, we will not consider such a claim for the first time in an application for writ of habeas corpus."); Ex parte Owenby , 749 S.W.2d 880, 881 (Tex. Crim. App. 1988) (violation of Speedy Trial Act is non-jurisdictional defect which cannot be raised on habeas review).

See Ex parte Douthit , 232 S.W.3d 69, 75-76 (Tex. Crim. App. 2007) (Price, J., dissenting) (observing that the "Legislature has thus far left the question of what is cognizable in a post-conviction writ of habeas corpus to this Court's interpretation"); Ex parte Tuan Van Truong , 770 S.W.2d 810, 815 (Tex. Crim. App. 1989) (Teague, J., dissenting) ("What is cognizable by way of habeas corpus is a matter to be determined by this Court. It can be judicially expanded or contracted to meet current requirements of the system. Moreover, its reach should comport with fairness.").

Wolters v. Wright , 623 S.W.2d 301, 304 (Tex. 1981).

Pat Walker & Co., Inc. v. Johnson , 623 S.W.2d 306, 308 (Tex. 1981).

Givens v. Woodward , 145 Tex. 150, 196 S.W.2d 456 (1946) (University of Texas Board of Regents); Malone v. Rainey , 133 Tex. 622, 133 S.W.2d 951 (1939) (President, Auditor, and Board of Regents of the University of Texas); McLarty v. Bolton , 144 Tex. 490, 191 S.W.2d 850 (1946) (Dean and Board of Directors of The Agricultural & Mechanical College of Texas (now known as Texas A&M University)).

But see Tex. Emp't Comm'n v. Norris , 634 S.W.2d 85, 87 (Tex. App.-Beaumont 1982, no writ) (finding that the trial court erred in granting writ of mandamus against the Employment Commission); Middlekauff v. State Banking Bd. , 111 Tex. 561, 242 S.W. 442 (1922) (writ of mandamus issued in original mandamus proceeding at the Supreme Court against the State Banking Board). However, Middlekauff is unclear as to which persons or entities the writ was issued against. In re TXU Elec. Co. , 67 S.W.3d 130, 142 (Tex. 2001) (Baker, J., concurring). The writ was sought against the Banking Board, the Commissioner of Insurance and Banking, the State Treasurer, and the Attorney General, but the Banking Board was comprised of those same three individuals. Id.

In re Nolo Press/Folk Law, Inc. , 991 S.W.2d 768, 776 (Tex. 1999).

Tex. Const. art. V, § 3 (a); Tex. Gov't Code Ann. § 22.002(a) (West 2004 & Supp. 2016).

McFall v. State Bd. of Ed. , 101 Tex. 572, 110 S.W. 739, 740 (1908).

Betts v. Johnson , 96 Tex. 360, 73 S.W. 4 (1903).

Glenn v. Indus. Accident Bd. , 184 S.W.2d 302, 307 (Tex. Civ. App.-Austin 1944), rev'd on other grounds , 144 Tex. 378, 190 S.W.2d 805 (1945).

Last year, in Ex parte Sepeda , we held that habeas corpus was the proper remedy by which to compel the parole board to provide a parole-denial letter in compliance with Government Code section 508.1411. See Ex parte Sepeda , 506 S.W.3d 25, 26-27 (Tex. Crim. App. 2016). The opinion applies to a very narrow issue that does not encompass the issue in this case. Overruling this recent opinion is not warranted.